UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL W. PERTUSET, | ) | CASE NO. C1-02-366 |
| | ) | |
| Plaintiff | ) | JUDGE SPIEGEL |
| v. | ) | |
| | ) | **SECOND MOTION FOR** |
| | ) | **SUMMARY JUDGMENT OF** |
| DON D. JONES, et al., | ) | **DEFENDANT NATIONAL UNION** |
| | ) | **FIRE INSURANCE COMPANY OF** |
| Defendants | ) | **PITTSBURGH, PA** |

Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") respectfully moves the Court for summary judgment pursuant to Civ. R. 56 (C), in that there are no genuine issues of material fact, and National Union is entitled to judgment as a matter of law.

National Union respectfully submits its Memorandum, Exhibits and Appendices in support of the present Motion.

        Respectfully submitted,

        _/s/ Michael J. Callow_____
        STEVEN G. JANIK (0021934)
        MATTHEW J. GRIMM (0065060)
        MICHAEL J. CALLOW (0065579)
        KATHLEEN A. NITSCHKE (0073397)
        JANIK & DORMAN, L.L.P.
        9200 South Hills Blvd., Suite 300
        Cleveland, Ohio 44147
        (440) 838-7600
        (440) 838-7601 Fax
        Email: Steven.Janik@Janiklaw.com
            Matthew.Grimm@Janiklaw.com
            Michael.Callow@Janiklaw.com
            Kathleen.Nitschke@Janiklaw.com

        Attorneys for Defendant National Union Fire
        Insurance Company of Pittsburgh, PA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL W. PERTUSET, | ) | CASE NO. C1-02-366 |
| | ) | |
| Plaintiff | ) | JUDGE SPIEGEL |
| v. | ) | |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **SECOND MOTION FOR SUMMARY** |
| DON D. JONES, et al., | ) | **JUDGMENT OF DEFENDANT** |
| | ) | **NATIONAL UNION FIRE INSURANCE** |
| Defendants | ) | **COMPANY OF PITTSBURGH, PA** |

### I. FACTS[1]

National Union Fire Insurance Company of Pittsburgh, PA ("National Union") hereby incorporates its original Motion for Summary Judgment filed on August 1, 2003 as if fully rewritten herein with respect to the facts, and all of the coverage defenses asserted therein. National Union respectfully submits this Memorandum in accordance with the Court's Order of February 11, 2004, so as to update the impact of the holding of the Supreme Court of Ohio in *Westfield Ins. Co. v. Galatis* (2003) 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, upon the coverage issues presented by this matter.

Although the claim of Pertuset survives *Galatis*, in that he was acting within the scope and course of his employment with Cargill at the time of the accident, National Union respectfully submits that the fundamental principles of policy construction restored by *Galatis* compel the conclusion that there are no genuine issues of material fact, and National Union is entitled to judgment as a matter of law for the reasons set forth in its Motion for Summary Judgment, and for the reasons that follow.

## II.    THE NATIONAL UNION FRONTING POLICIES ARE EXEMPT FROM R.C. § 3937.18

Application of *Galatis* supports judgment in favor of National Union on the basis that the National Union Fronting Policies are exempt from R.C. § 3937.18 because Cargill retains 100% of the risk of loss, and is therefore "self-insured in the practical sense."

The United States District Court for the Southern District of Ohio ("Southern District") has recognized the persuasive rationale of this defense no less than four (4) times in *Lafferty*, *Redd*, *Rutlin,* and *Delphi*.  In this regard, the conclusion of the Southern District is in accord with that of the United States District Court for the Northern District of Ohio, a majority of the Appellate Districts of the Court of Appeals of Ohio, and a majority of the Courts of Common Pleas.  See *White v. The Ins. Co. of the State of Pennsylvania*, Case No. 5:02CV0999 (N.D. Ohio, August 5, 2003) (App. HHH); *Dorsey v. Federal Ins. Co.,* 154 Ohio App.3d 568, 798 N.E.2d 47 (7th Dist. 2003); *Reese v. Hartford Ins. Co.,* Case No. 21455, 2003-Ohio-4269 (9th Dist., Aug. 13, 2003)(App. III); *Carns v. Smith,* Case No. 01-972H (C.P. Richland Cty. Nov. 7, 2003) (App. JJJ); *Rodriguez v. Maloney*, Case No. CI01-4866 (C.P. Lucas Cty, Aug. 28, 2003) (App. KKK); *Helton v. Young,* Case No. 01-CV-35004 (C.P. Defiance Cty., June 18, 2003)(App. LLL); *Bibby v. Nationwide Ins. Co.,* Case No. 477785 (C.P. Cuyahoga Cty., June 10, 2003)(App. MMM); *Murphy v. Thornton,* Case No. 02 PI 002 (C.P. Jackson Cty., May 12, 2003)(App. NNN); *Henzel v. National Union Fire Ins. Co. of Pittsburgh, PA,* (C.P. Stark Cty., May 5, 2003)(App. OOO); *Smith v. State Auto Mut.,* Case No. 2001 01 4932 (C.P. Summit Cty., Jan. 28, 2003)(App. PPP).

"Self-insureds in the practical sense" know what protections they intend to provide, and the risks they retain under a fronting policy.  Policyholders like Cargill do not provide UM/UIM

---

[1]  For the convenience of the Court, National Union will use the same headings, abbreviations, references to exhibits and appendices as used in its Motion for Summary Judgment and will label additional authorities sequentially.

coverage to their employees under fronting policies to avoid duplicating the costs of workers compensation, health, medical, and disability insurance used to protect their employees from injuries sustained during the course and scope of employment.

In this regard, *Galatis* recognizes that the rights of policyholders and insurers are vested under the United States Constitution and the Ohio Constitution. *Galatis* @ 218-219, N.E.2d @ 1261. This protection is afforded "to give effect to the intent of the parties to the agreement." *Id.* "The intent of the parties is paramount." *Id.* @ 229, N.E.2d @ 1270.

To impose R.C. § 3937.18 upon fronting policies is to impose the statute by judicial decision upon contractual risk management mechanisms that were never intended to provide UM/UIM coverage. National Union respectfully submits that to do so is no different than if the Ohio General Assembly amended R.C. § 3937.18 to impact the rights of parties to fronting agreements. Each act is an unconstitutional impairment of the obligation of contracts, to the detriment of the policyholder. *See Galatis* @ 222, N.E.2d @ 1264; *Peerless Elec. Co. v. Bowers* (1995), 164 Ohio St. 209, 210, 729 N.E.2d 467, 468; *Sidney v. Cummins* (1916), 93 Ohio St. 328, 334, 113 N.E. 218, 220; *Thomas v. Gilbert* (1907), 76 Ohio St. 341, 359, 364, 81 N.E. 437, 439, 440 ("a change of decision is, to all intents and purposes, the same in its effect on contracts as an amendment of the law by means of a legislative enactment"); *National Mut. Ins. Co. v. Jackson*, No. 91-G-1637, 1992 WL 86567 (Ohio App. 11 Dist., March 27, 1992)(Eleventh Appellate District recognized that a judicial decision can impair the obligation of contracts and violate constitutionally vested rights as the practical equivalent to a legislative act accomplishing the same result)(App. QQQ).

Therefore, the defense of "self-insurance in the practical sense" remains undisturbed by and is supported by *Galatis*. Cargill retains 100% of the risk of loss under the National Union

Fronting Policies, and is therefore "self-insured in the practical sense," the Fronting Policies are exempt from R.C. § 3937.18, Pertuset cannot impose UM/UIM coverage upon the Fronting Policies by operation of law, the intent of Cargill to reject UM/UIM coverage under the CA Fronting Policy, and to not provide UM/UIM coverage under the GL Fronting Policy is enforceable as a matter of contract, there are no genuine issues of material fact, and National Union is entitled to judgment as a matter of law.

### III. THE GL FRONTING POLICY IS NOT SUBJECT TO R.C. § 3937.18

*Galatis* supports the conclusion compelled by application of the Supreme Court of Ohio's decisions in *Hillyer* and *Davidson* that the GL Fronting Policy is not a motor vehicle liability policy subject to R.C. § 3937.18. Cargill and National Union did not intend for the GL Fronting Policy to provide liability coverage for automobiles operated on public roads, or to provide UM/UIM coverage. *Galatis* supports enforcement of this intent, there are no genuine issues of material fact, and National Union is entitled to judgment as a matter of law.

### IV. PERTUSET WAS NOT OCCUPYING A COVERED AUTO

Consistent with the intent of Cargill to reject UM/UIM coverage in Ohio, the CA Fronting Policy was not issued with an Ohio UM Endorsement. However, any UM/UIM coverage imposed upon the CA Fronting Policy by operation of law is imposed consistent with the terms of the Declarations, which supply the named insured, the effective dates, the limits of liability, and the identification of covered autos for purposes of UM/UIM coverage.

In this regard, the use of Symbol 6 to describe "covered autos" for purposes of UM/UIM coverage is consistent with the intent of Cargill to reject UM/UIM coverage in all states where allowed, such as Ohio, so as to identify "covered autos" for purposes of UM/UIM coverage only in those states where such coverage is mandatory and cannot be rejected.

The reference to "'autos' you own" within Symbol 6 refers solely and exclusively to Cargill as the corporate named insured, because corporations may own property, such as motor vehicles, in contrast to the fact that corporations cannot suffer bodily injury except by and through its employees.

Therefore, Pertuset was not occupying an auto owned by Cargill, and covered for purposes of UM/UIM coverage, and in accordance with the intent of Cargill and National Union, there are no genuine issues of material fact, and National Union is entitled to judgment as a matter of law.

### V.    PERTUSET IS NOT ENTITLED TO UM/UIM COVERAGE UNDER THE BE POLICY

Consistent with the intent of Cargill and National Union, coverage under the BE Policy does not attach until $5 million is paid under the CA or GL Fronting Policies, and if no coverage is available under the National Union Fronting Policies, then no such coverage is available under the BE Policy. *Snyder v. Westfield Ins. Co.*, C.A. No. 02CA0064, 2003-Ohio-5904 (9th Dist., Nov. 5, 2003) (App. FFF).

Therefore, UM/UIM coverage cannot be imposed upon the BE Policy because no such coverage is available in the National Union Fronting Policies, there are no genuine issues of material fact, and National Union is entitled to judgment as a matter of law.

### VI.    *SCOTT-PONTZER* WAS DECIDED ERRONEOUSLY

The argument of National Union that *Scott-Pontzer* was wrongly decided, based in large part upon the wisdom of decisions from the Southern District, was adopted by the Supreme Court of Ohio, and therefore, no longer requires a ruling by the Court. See *Galatis* @ 221, N.E.2d @ 1263.

### VII. NATIONAL UNION IS ENTITLED TO A CREDIT OF ALL COLLATERAL SOURCES

Since the filing of National Union's Motion for Summary Judgment, the decision of the Court of Common Pleas for Montgomery County, Ohio, in *Roberts v. State Farm Mut. Auto. Ins. Co.*, Case No. 00-CV-0886 (App. GGG), was affirmed on appeal by the Court of Appeals of Ohio, Second Appellate District. *Roberts v. State Farm Mut. Auto. Ins. Co.* (2nd Dist., 2003), 155 Ohio App.3d 535, 802 N.E.2d 157.

In *Roberts*, Carol Robert ("Roberts") was injured, in the course and scope of her employment with Emery Air Freight Corporation ("Emery"). At the time of the accident, Emery was insured under a commercial automobile policy issued by National Union. Roberts was also insured for personal automobile liability by State Farm, whom she settled with for the $100,000 liability limits of her policy.

Roberts sought UM/UIM coverage under the National Union Policy. A jury trial was held and a verdict was returned in favor of Roberts for $92,000.00. After the verdict, National Union sought to have the judgment amount reduced by the amount previously paid to Roberts by State Farm. The Court held that National Union was entitled to set-off, stating:

> The collateral source rule is "the judicial refusal to credit to the benefit of the wrongdoer money or services received in reparation of the injury caused which emanates from sources other than the wrongdoer." *Carville v. Estate of Phillips* (Aug. 25, 2000), Miami App. No. 99CA52, 2000 WL 1209272, at *2 (citation omitted). We have held [sic] found that "[s]ubstantively, the collateral source rule is an exception to the general rule in tort actions that the measure of the plaintiff's damages is that which will make her whole. Through this exception, the plaintiff is allowed to receive more than the amount of damages she actually incurred. The rationale for the exception to the general rule is that benefits the plaintiff receives from a source wholly independent of the wrongdoer should not benefit the wrongdoer by reducing the amount of damaged which a plaintiff might otherwise recover from him. As an evidentiary rule, the collateral source rule bars the introduction into evidence of collateral payments to the plaintiff in order to prevent the jury's

> consideration of such payments in determining the amount of damages." *Id.* (internal citations omitted).
>
> The Ohio Supreme Court has held that "the legal basis for recovery under the uninsured motorist coverage of an insurance policy is contract and nor tort." *Krely v. Vannewkirk* (1994), 69 Ohio St.3d 627, 632, 635 N.E.2d 3223 (citation omitted). "The underlying public policy for provision of uninsured and underinsured motorist coverage id to "assure that an injured person receive at least the same amount of compensation whether the tortfeasor is insured or uninsured." *Blue Cross and Blue Shield Mut v. Hrenko,* 72 Ohio St.3d 120, 123, 1995-Ohio-306, 647 N.E.2d 1358 (citation omitted). In *Hrenko*, the Ohio Supreme Court found that the insured's uninsured motorist coverage was not improperly reduced, because he received the same amount of compensation he would have received had the tortfeasor been insured. *Id.* The Ohio Supreme Court further found that it would be improper to place the insured in a better position than he was in before the accident, because "[t]he purpose of the uninsured motorist coverage is to compensate that individual and not to permit what might be viewed as a windfall." *Id.*
>
> Here, the jury did into receive evidence regarding the collateral source payment by State Farm to Robertses (sic), so it did not consider the State Farm payment in determining the amount of damages owed to Roberts. The jury determined that Roberts was injured, and that her injuries could be made whole by compensating her in the amount of $92,000. Given that Roberts had already received compensation in the amount of $100,000 from State Farm, the jury's award establishes that she has already been fully compensated. To fail to reduce Roberts' verdict against National Union by the amount of the settlement with State Farm would result in Roberts receiving compensation in an amount double the value the jury placed upon her loss-i.e. windfall.
>
> We conclude that it was proper for the trial court to reduce Roberts' verdict against National Union by the amount of the settlement with State Farm. Based on this conclusion, we find it unnecessary to address the other arguments raised by National Union in support of the trial court's reduction of the amount of the verdict.

*Id.* @ 155 Ohio App.3d @ 546-548, 802 N.E.2d. @ 166-167. *Accord Vassiliu v. Daimler Chrysler Corp.,* 178 N.J. 286, 839 A.2d 863 (2004).

Cargill did not intend to provide UM/UIM coverage under the National Union Policies to avoid duplicating the costs it incurs for workers compensation, health, medical, and disability

insurance protecting its employees who are injured during the course and scope of employment. Pertuset has enjoyed these protections because his accident took place while he was in the course and scope of employment.

As a matter of contract, these payments, and the $50,000 received from Allstate as the automobile liability insurer of Jones, should be credited against any amount of UM/UIM coverage available under the National Union Policies so as to avoid a windfall recovery from Cargill which through its retention of the risk of loss would otherwise be required to make payments for UIM coverage, duplicated by workers compensation, and/or other employment benefits.

Therefore, National Union may credit all collateral sources paid to Pertuset against any UIM coverage available under the National Union Fronting Policies, there are no genuine issues of material fact, and National Union is entitled to judgment as a matter of law.

## VIII. CONCLUSION

For all the foregoing reasons, and those more fully enumerated in its Motion for Summary Judgment, National Union respectfully submits that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.

Respectfully submitted,

_/s/ Michael J. Callow_____
STEVEN G. JANIK (0021934)
MATTHEW J. GRIMM (0065060)
MICHAEL J. CALLOW (0065579)
KATHLEEN A. NITSCHKE (0073397)
JANIK & DORMAN, L.L.P.
9200 South Hills Blvd., Suite 300
Cleveland, Ohio 44147
(440) 838-7600
(440) 838-7601 Fax
Email: Steven.Janik@Janiklaw.com
          Matthew.Grimm@Janiklaw.com
          Kathleen.Nitschke@Janiklaw.com
          Brian.McElroy@Janiklaw.com

Attorneys for Defendant National Union Fire
Insurance Company of Pittsburgh, PA

## CERTIFICATE OF SERVICE

    I hereby certify that on this 19th day of March, 2004, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                             /s/ Michael J. Callow_____
                                             One of the Attorneys for Defendant
                                             National Union Fire Insurance
                                             Company of Pittsburgh, PA

2-1612/MSJ0002b.34/cp