Slip Copy
(Cite as: 2003 WL 22881538 (Ohio Com.Pl.))

Page 1

Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Common Pleas of Ohio.

Bethany J. CARNS, a minor, by Cathy Carns Grupe as next friend parent and guardian, Plaintiff,
v.
Rodney L. SMITH, et al., Defendants.

No. 01-972H.

Nov. 7, 2003.

Minor injured in motor vehicle accident sued insurer of family members' employer seeking underinsured motorist (UIM) benefits. Insurer moved for summary judgment. The Court of Common Pleas, Richland County, No. 01-972H, James D. Henson, J., held that: (1) fronting policies were not subject to statutory UIM coverage; (2) surety provision in bankruptcy clause did not shift risk to insurer; (3) failure to obtain certificate of self-insurance did not require application of statutory UIM coverage; and (4) minor was not an "insured" entitled to UIM benefits under employer's policies.

Summary judgment granted.

[1] Insurance ⟨=⟩2776

217k2776 Most Cited Cases

Employer's policies were self-insured fronting policies that were not subject to statute governing underinsured motorist (UIM) coverage for automobile insurance policies, and thus, injured minor was not entitled to UIM benefits from insurer as family member of employees; policy limits matched policy deductibles, and employer did not shift risk to insurer. R.C. § 3937.18(A).

[2] Insurance ⟨=⟩2776

217k2776 Most Cited Cases

Bankruptcy clause, in which insurer acts as surety in event of bankruptcy, in employer's self-insured fronting policies provided collateral to insurer in event of employer's default, and thus, risk was not shifted to insurer, as required to render self-insurance program subject to statutory underinsured motorist (UIM) coverage; employer maintained trust to fund insurance payments in event of bankruptcy or other default, and employer's obligation to pay claims was not eliminated or shifted in event of bankruptcy. R.C. § 3937.18.

[3] Insurance ⟨=⟩2776

217k2776 Most Cited Cases

Employer's failure to obtain certificate of self-insurance did not subject self-insured fronting policies to requirements of statutory underinsured motorist (UIM) coverage; certificate of self-insurance was not exclusive method for satisfying requirements of Financial Responsibility Statute. R.C. § 3937.18; R.C. § 4509.101.

[4] Insurance ⟨=⟩2660

217k2660 Most Cited Cases

Minor injured in automobile accident was not an "insured" entitled to underinsured motorist (UIM) benefits under family members' employer's self-insured fronting policies; policies only insured those injured in "covered auto," minor was not in covered auto at time of accident, and definition of "insured" was not ambiguous.

Jay J. Hurlbert, Scott W. Schiff & Associates Co., LPA, Columbus, OH, for Plaintiff.

Daniel R. Mordarski, Zeiger & Carpenter LLP, Columbus, Ohio, for General Motors Corporation.

Matthew Grimm, Janik & Dorman, Cleveland, OH, for Defendant National Union Fire Insurance Company Of Pittsburgh, PA.

Michael R. Henry, Crabbe Brown & James, Columbus, OH, for Defendant Rodney L. Smith.

G. Michael Curtin, Curtin & Assoc. LLP, Akron, OH, for Defendant Allstate Insurance Company.

David D. Carto, Weldon, Huston & Keyser, LLP, Mansfield, OH, for Defendant Motorist Insurance

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 22881538 (Ohio Com.Pl.))

Page 2

Company.

## JUDGMENT ENTRY AND MEMORANDUM OPINION

HENSON, J.

*1 This case is one of many *Scott-Pontzer* cases before this Court. Plaintiffs made claims in this case for underinsured motorist ("UIM") payments from various sources. One source is National Union Fire Insurance Company of Pittsburgh PA ("National Union") because of the policies it issued to General Motors Corporation ("General Motors"). The parties have fully briefed the issues and this case is ripe for this Court's decision. [FN1]

> FN1. The following documents have been filed with the Court regarding this issue: Plaintiffs' Motion For Summary Judgment Against National Union Fire Insurance Co. Of Pittsburgh, PA; Defendant General Motors Corporation's Motion For Summary Judgment; Motion For Summary Judgment Of Defendant National Union Fire Insurance Co. of Pittsburgh, PA; Defendant General Motors Corporation's Memorandum In Opposition To Plaintiff's Motion For Summary Judgment; Plaintiffs' Memorandum Contra To General Motors Corporation's Motion For Summary Judgment; Plaintiffs' Memorandum Contra To National Union Fire Insurance Co. of Pittsburgh, PA's Motion For Summary Judgment; Plaintiff's Reply To General Motors Corporation's Memorandum In Opposition To Plaintiffs' Motion For Summary Judgment; Defendant General Motors Corporation's Reply Brief In Support Of Its Motion For Summary Judgment; Brief Of Defendant National Union Fire Insurance Co. Of Pittsburgh, PA In Opposition To Plaintiffs' Motion For Summary Judgment And Reply Brief In Support Of Its Motion For Summary Judgment; Plaintiffs' Reply To National Union Fire Insurance Co. Of Pittsburgh, PA's Memorandum In Opposition To Plaintiffs' Motion For Summary Judgment. Additionally, numerous notices of supplemental authority have been filed.

On October 21, 2000, Bethany Carns, a minor, suffered personal injury in a vehicular accident caused by the negligence of Rodney L. Smith ("tortfeasor"). Bethany's mother, Cathy Carns ("plaintiff"), claims the automobile liability insurance coverage on the vehicle the tortfeasor was driving is inadequate to compensate Bethany for the resulting injuries. As a result, plaintiff is attempting to obtain underinsured motorist coverage ("UIM") from a number of sources.

Plaintiff states that Troy Carns (brother of Bethany Carns) and Terry Grupe (husband of Cathy Carns) worked for General Motors at the time of the accident. Based upon these relationships with General Motors, plaintiff seeks UIM payments from General Motors' automobile policies.

Plaintiff argues General Motors has automobile insurance policies and pursuant to the Ohio Supreme Court's decision in *Scott-Pontzer,* plaintiff is entitled to UIM payments from those policies. General Motors argues it does not have "insurance" policies. Instead, General Motors argues it has self-insured fronting policies that are part of General Motors self-insured Risk Management Program. General Motors argues that it retains its risk, and does not shift any risk to National Union.

*General Motors' Self-Insured Risk Management Program*

At the time of plaintiff's accident, General Motors had a Risk Management Program ("Program") under which General Motors retained the risk of the first $10 million of each loss. The Program is established through documents provided by National Union. The Program includes the following documents:
 a. A Primary business auto fronting policy issued to General Motors by National Union identified as Policy No. RMCA534-80-04 containing a $300,000 deductible matching the $300,000 policy limit ("Primary fronting policy");
 b. An Excess business auto fronting policy issued to General Motors by National Union identified as Policy No. RMCA 534-80-05 containing a $9,700,000 deductible matching the $9,700,000 policy limit ("Excess fronting policy");
 c. A Policy And Funding Schedule for September 1, 2000 to September 1, 2001 ("Policy and Funding Schedule");
 d. An Indemnity Agreement with Addenda Nos.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy  
(Cite as: 2003 WL 22881538 (Ohio Com.Pl.))

Page 3

1, 1A, 2, and 3 ("Indemnity Agreement"); and
e. An Indemnity And Trust Agreement ("Trust Agreement").
*See* Affidavit of Alan Gier, Director for Risk Management at General Motors.

The fronting policies, Policy and Funding Schedule, Indemnity Agreement, and Trust Agreement constitute "a uniquely negotiated single contract and no part of the Program would have been issued without the other parts being in force." *See* Indemnity Agreement, Article I, p. 1. All of these documents must be considered in determining whether plaintiff is entitled to any payments from the Program. [FN2]

> FN2. *See Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Authority,* 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (1997) ("a writing or writings executed as part of the same transaction will be read as a whole, and the intent of each part will be gathered from a consideration of the whole."); *Mantua Mfg. Co. v. Commerce Exchange Bank,* 75 Ohio St.3d 1, 5, 661 N.E.2d 161 (1996) ("Multiple documents should be construed together if they are part of the same transaction."); *Christe v. GMS Management Co., Inc.,* 124 Ohio App.3d 84, 88, 705 N.E.2d 691 (Summit Co.1997) ("Where one instrument incorporates another by reference, both must be read together. Courts should attempt to harmonize provisions and words so that every word is given effect."); *Prudential Ins. Co. of America v. Corporate Circle, Ltd.* 103 Ohio App.3d 93, 98, 658 N.E.2d 1066 (Cuyahoga Co.1995) ("Thus, all writings that are part of the same transaction should be interpreted together, and effect should be given to every provision of every writing.").

*Self-Insured Nature Of General Motors' Fronting Program.*

\*2 Each fronting policy has a deductible that matches the policy limits of that fronting policy. In addition to the matching deductible endorsement in each policy, the Policy and Funding Schedule also memorializes the matching deductibles or self-insured retention limits for each policy. The Policy and Funding Schedule lists all of the fronting policies provided to General Motors for the policy year. Section C lists the self-insured retention amounts for each fronting policy. Each amount matches the respective policy limit.

Also, General Motors' Program contains an Indemnity Agreement between National Union and General Motors. The Indemnity Agreement indicates that General Motors is ultimately responsible for paying any claims brought against the self-insured fronting policies. The matching deductibles, Policy and Funding Schedule, and Indemnity Agreement demonstrate that General Motors has retained all risks covered by these fronting policies. Any single one of these mechanisms, standing alone, would be sufficient to demonstrate that General Motors retains its risk under these fronting policies. The combination of all of these mechanisms makes the conclusion inescapable. General Motors has not shifted any risk to National Union.

Finally, General Motors' duty to indemnify National Union is secured by "a trust for the sole and exclusive benefit of the Beneficiary [National Union] for the purpose of providing collateral for the Grantor's [General Motors'] obligation under the Indemnity Agreement." *See* Trust Agreement. General Motors transferred no risk to National Union. Instead, General Motors obligated up to $10 million of its own funds for any given loss. [FN3]

> FN3. Under the Program, National Union does not even administer or adjust claims. A separate company, ESIS, Inc., performs that function. Gier Aff. at ¶ 5.

*The Contractual Arrangement Between General Motors And National Union Is Not Insurance Because General Motors Retains The Risk.*

General Motors' Program is known as a self-insured fronting program. Self-insured fronting policies do not shift risk to the insurance company that provides them. They retain risk for the policy holder. Numerous courts outside the State of Ohio have recognized that fronting policies create self-insurance because there is no shift of risk. [FN4]

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 22881538 (Ohio Com.Pl.))

Page 4

FN4. *See Air Liquide America Corp. v. Continental Cas. Co.*, 217 F.3d 1272, 1274 (10th Cir.2000) ("The CIGNA policy issued to Air Liquide, however, is not a typical liability insurance policy. Rather it establishes that Air Liquide's deductible under the policy ($1M) is exactly equal to the policy limits ($1M). Thus, it is actually a form of self-insurance, under which Air Liquide is responsible for its own losses and CIGNA acts merely as a surety that Air Liquide will be able to pay any judgment covered under the policy. Such arrangements are known as 'fronting' policies."); *Blair v. Republic Ins. Co.*, 2000 U.S. Dist. Lexis 5185 at * 1 (E.D.Pa.2000) ("Trailways was insured under a 'fronting policy' issued by Ranger Insurance Company, which in essence rendered Trailways self insured for the first $500,000 of liability per occurrence."); *Tribune Co. v. Allstate Ins. Co.*, 306 Ill.App.3d 779, 239 Ill.Dec. 818, 715 N.E.2d 263, 266 (Ill.Ct.App.), *appeal denied*, 186 Ill.2d 590, 243 Ill.Dec. 569, 723 N.E.2d 1170 (Ill.1999). ("During 1980, Tribune began a program by which it purchased at a very low price general liability insurance policies in which the primary insurer's limits of liability matched the deductible. The Tribune's risk manager explained that under such a 'fronting' or 'matching deductible' policy, the insurer's affiliate provided claims handling services, but the policy holder effectively insured itself up to the primary policy limits."); *Missouri Pac. R.R. Co. v. International Ins. Co.*, 288 Ill.App.3d 69, 223 Ill.Dec. 350, 679 N.E.2d 801, 809 (Ill.Ct.App.), *appeal denied*, 174 Ill.2d 567, 227 Ill.Dec. 8, 686 N.E.2d 1164 (Ill.1997) ("Some of this primary coverage included fronting policies which effectively rendered Gypsum self-insured over several excess policy periods."); *Lafarge Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA.*, 935 F.Supp. 675, 680 (D.Md.1996) ("The two primary policies issued by these insurers were in fact 'fronting policies' and the Lafarge parties were therefore in essence self-insured up to the limits of liability of these policies."); *American Mut. Liab. Ins. Co. v. Beatrice Co., Inc.*, 924 F.Supp. 861, 867 (N.D.Ill.1996) ("After March 1, 1977, Beatrice converted to a self-insured retention under which Transport 'fronted' up to $500,000 per occurrence, an amount equal to Beatrice's deductible." * * * "During that period, the first layer of Beatrice's insurance program was the self-insured retention 'fronted' by Transport."); *Northwestern Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 42 (Del.Sup.Ct.1996) ("Northwestern, by contrast, issued its primary liability policy as part of a fronting arrangement whereby Playtex effectively self-insured the first $7 million of its potential TSS losses. The fronting arrangement was effectuated through a deductible endorsement to the policy and a separate hold harmless agreement."); *Forest Ins., Ltd. v. American Motorists Ins. Co.*, 1994 U.S. Dist. Lexis 3334 at *5 (S.D.N.Y.1994) ("such an arrangement permits the company for all practical purposes to self-insure losses up to the amount of the deductible ..."); *United States Elevator Corp. v. Associated Int'l Ins. Co.*, 215 Cal.App.3d 636, 263 Cal.Rptr. 760, 762 (Cal.Ct.App.1989) ("Since USEC, however, chose the deductible feature of the INA policies above summarized, the practical effect of the choice was that USEC thereby elected to become self-insured....").

Plaintiff's claims against General Motors' Program depend upon an argument that National Union contracted with General Motors to provide "insurance." However, "insurance" requires a party to shift its risk to the insurer. *Delong v. Myers*, 2003-Ohio-2702, ¶ 13 (Knox May 27, 2003); *Physicians Ins. Co. of Ohio v. Grandview Hosp. & Med. Ctr.*, 44 Ohio App.3d 157, 158, 542 N.E.2d 706 (Montgomery Co.1988) ("Insurance *shifts the risk* of loss from an insured to an insurer.") (emphasis added); *see also Black's Law Dictionary* (7 Ed.1999), 802 ( [Insurance is] "an arrangement by which one party *assumes a risk* faced by another party in return for a premium payment.") (emphasis added). The fronting policies in General Motors' Program are not insurance policies. They are the "antithesis of insurance." *Physicians Ins.*, 44 Ohio App.3d at 158, 542 N.E.2d 706.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 22881538 (Ohio Com.Pl.))

Page 5

*3 General Motors does not shift its risk to National Union. The Program does just the opposite. The Indemnity Agreement and matching deductibles in the Program retain risk for General Motors rather than shifting it to National Union. The Trust serves as collateral to ensure that no risk is shifted to National Union. [FN5]

> FN5. Self-insured fronting permits entities to conduct business in various states and maintain a consistent self-insured program in each jurisdiction. *See Forest Ins., Ltd. v. American Motorists Ins. Co.,* 1994 U.S. Dist. Lexis 3334 at *5 (S.D.N.Y.1994) ("The above-described fronting arrangement, coupled with a claim service provider like NATLSCO, is beneficial and cost effective to a large company like IPC because such an arrangement permits the company for all practical purposes to self-insure losses up to the amount of the deductible without meeting the formal legal requirements for qualifying as a self-insurer in jurisdictions where it does business ."). A fronting program also provides a foundation for true excess insurers to provide their excess coverage while knowing that a uniform method of claims administration will be implemented by the underlying self-insurer. *See Insurance Co. of N. Am. v. Pyramid Ins. Co. of Bermuda LTD.,* 1994 U.S. Dist. Lexis 3001 (S.D.N.Y. March 16, 1994) ( [The fronting policy] "assured excess insurers that claims administration and defense of litigation would be handled in a consistent, easily understood fashion.").

*The Ohio UM/UIM Statute Does Not Apply To Self-Insured Fronting Policies*

[1] The Ohio UM/UIM statute applies only to "automobile liability and motor vehicle liability *policies of insurance."* R.C. § 3937 .18(A) (emphasis added). None of the fronting policies provided by National Union to General Motors are "policies of insurance." They do not shift risk to National Union.

The Ohio Supreme Court determined the Ohio UM/UIM statute does not apply to risk management devices, like General Motors' Program, that create the practical equivalent of self-insurance. In *Grange Mutual Casualty Co. v. Refiners Transport & Terminal Corp.,* 21 Ohio St.3d 47, 487 N.E.2d 310 (1986), Refiners Transport entered into a contractual arrangement with American Casualty Company relative to auto liability risk. Under the terms of the agreement, Refiners Transport was responsible for paying any automobile liability claims. American Casualty guaranteed their payment. If American Casualty was ever required to pay on behalf of Refiners Transport, Refiners Transport was required to reimburse American Casualty. Plaintiff attempted to impose statutory UM/UIM coverage on this self-insured arrangement. The Ohio Supreme Court rejected plaintiff's argument. The unanimous Ohio Supreme Court held in its syllabus:

> The uninsured motorist provisions of R.C. 3937.18 do not apply to either self-insurers or financial responsibility bond principals.

The Ohio Supreme Court was careful to specify that Refiners Transport did not obtain a formal certificate of self-insurance. Refiners Transport was not a self-insurer in the legal sense contemplated by the Ohio financial responsibility laws. Rather, it was self-insured "in the practical sense" since it was ultimately responsible for paying any claim. *Id.* at 49, 487 N.E.2d 310. Because R.C. § 3937 .18 only applies to insurance policies, it was not applicable to Refiners Transport. Like Refiners Transport, General Motors is self-insured in the practical sense through its self-insured fronting Program. Therefore, R.C. § 3937.18 does not apply to General Motors' fronting policies.

The Fifth Appellate District has repeatedly addressed this issue and has held that R.C. 3937.18 does not apply to self-insured arrangements. In *Rupple v. Moore,* 2002-Ohio-4873 (Ashland Sept. 11, 2002), the Court analyzed whether the Ohio UM/UIM statute applies to self-insured fronting policies that have deductibles matching the liability limits. In *Rupple,* plaintiff attempted to impose statutory UIM coverage on a fronting policy issued to ConAgra by Continental Casualty Company. The court began its analysis by stating: "We must first address the matter of whether the policy in question is a 'policy of insurance' which must comply with the requirements of R.C. § 3937.18." *Id.* at ¶ 16. The Court then analyzed ConAgra's self-insured fronting policy:

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 22881538 (Ohio Com.Pl.))

Page 6

*4 ConAgra's policy with Continental is a "fronting" or "matching deductible" policy. The policy has a liability limit of two million dollars and a matching deductible of two million dollars. The policy requires ConAgra to reimburse Continental for any claims paid on its behalf. Under the agreement, Continental provides services to ConAgra, including the defense and adjustment of claims made against it, and the use of its licenses as an insurer. The agreement and policy permit ConAgra to satisfy the motor vehicle financial responsibility requirements of the various states in which it operates motor vehicles, including Ohio. See R.C. § 4509.01, et seq., which contains Ohio's Financial Responsibility Act for motor vehicles.

Id. at ¶ 17. The court held R.C. § 3937.18 does not apply to self-insured fronting policies.

Similarly, in *Delong v. Myers,* 2003-Ohio-2702 (Knox May 27, 2003), plaintiff argued the existence of a bankruptcy clause in a self-insured fronting policy indicated that the entity was not self-insured in the practical sense. The Fifth Appellate District rejected this argument because the fronting policies in that case, like General Motors' fronting policies in this case, had collateral that protects the fronting company if bankruptcy is filed. The Court held:

In the event of a bankruptcy, there is a fund via the letter of credit or collateral trust provided by ConAgra that would generate the costs associated with any losses paid by Continental. In this regard, the risk of loss is not shifted to Continental but is secured by the letter of credit or collateral trust.

Based upon the foregoing, we find ConAgra to be self-insured in the practical sense and therefore is not required to fulfill the mandates of R.C. § 3937.18. See, *Grange Mutual Casualty Company v. Refiners Transport & Terminal Corp.* (1986), 21 Ohio St.3d 47, 487 N.E.2d 310.

Id. at ¶¶ 15-16.

The Fifth Appellate District again addressed the issue in *Dalton v. Travelers Ins. Co.,* 2002-Ohio-7369 (Stark Dec. 23, 2002). In *Dalton,* the court analyzed two self-insured arrangements. The first was a fronting policy that had a $1 million deductible that matched the $1 million policy limits. The other arrangement was a $2 million policy with a $500,000 deductible. The Court held R.C. § 3937.18 does not apply to the matching deductible fronting policy and it does not apply to the $500,000 deductible portion of the $2 million policy. The Court stated:

[O]ur inquiry is whether National's policies make the employer, Collins, ultimately responsible under the terms of the agreement. Does Collins bare the risk of loss up to the retained amounts? We answer in the affirmative for the following reasons.

Exhibits 2, 3, and 6, attached to National's September 24, 2001 Motion for Summary Judgment, are the two National policies (commercial automobile policy, No. RMCA 320-73-73, and general liability policy, No. RMGL 113-50-39, Renewal No. 1437841), a Payment Agreement and a Large Risk Rating Plan Endorsement. The commercial automobile policy has limits of $2,000,000 and the general liability policy has limits of $1,000,000. The payment agreement makes Collins responsible upon billing for each payment made under the policy, up to $500,000 for the commercial automobile policy and $1,000,000 for the general liability policy. See, Payment Agreement, Part II, Payment of Premiums, Article 1(1) and (2), and Part II, Schedule of Policies, Section 5, attached to National's September 24, 2001 Motion for Summary Judgment as Exhibit 6. In order to secure the amounts that may be paid, Collins is required to provide a promissory note and a security acceptable as collateral. See, Payment Agreement, Part II, Articles 2 and 3, attached to National's September 24, 2001 Motion for Summary Judgment as Exhibit 6. Based upon these documents, we find Collins is responsible for payments made to claimants under the policy up to the retained amounts. By agreeing to reimburse and provide a promissory note and security, Collins is self-insured up to the retained amounts because the risk of loss has not shifted away from Collins. Collins is self-insured up to $500,000 under the commercial automobile policy and up to the policy limit of $1,000,000 under the general liability policy. Collins is insured in the traditional sense for the remaining 1.5 million of the commercial automobile policy. R.C. 3937.18 does not apply to Collins and the National policies up to the retained amounts, but does apply to the 1.5 million.

*5 Id. at ¶¶ 145-146. The Fifth Appellate District has made it clear that the UM/UIM statute does not apply to "fully fronted" fronting policies that have matching deductibles. And, the statute does not apply to the deductible portion of policies.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 22881538 (Ohio Com.Pl.))

Page 7

See also, *Jordan v. Travelers Property Cas. Ins. Co.,* 2003-Ohio-1389, ¶ 56 (Stark March 17, 2003) ("Because Sally Beauty agreed to reimburse the insurance company for payments made by the insurance company under the policy up to the retained amounts (or deductible) and to provide a Letter of Credit upon which Travelers could draw in the case of default, we find that Sally Beauty was self-insured for the amount of the deductible, or $250,000.00. Therefore R.C. § 3937.18 does not apply up to $250,000.00 but does apply to the amounts over $250,000.00. In other words, the UM/UIM coverage would be for damages after they exceeded $250,000.00 and only to the extent the damages did not exceed the One Million Dollar limit of the commercial auto liability policy.")

The Fifth Appellate District decisions are clear. The UM/UIM statute does not apply to self-insured fronting policies. Most other Ohio appellate jurisdictions, as well as United States District Courts, also have held R.C. 3937.18 does not apply to self-insured fronting policies. [FN6] The facts in this case demonstrate that General Motors is self-insured because General Motors does not shift any risk. Instead, it retains all risk.

> FN6. *See Dorsey v. Federal Insurance Company,* 2003-Ohio-5144, 154 Ohio App.3d 568, 798 N.E.2d 47 (Jefferson September 26, 2003); *Landers v. Lucent Technologies, Inc.,* 2003-Ohio-3326 (Cuyahoga July 9, 2003); *Townsley v. Natl. Union Fire Ins. Co. of Pittsburgh,* 2003-Ohio-3419 (Sandusky June 30, 2003); *Rucker v. Davis,* 2003-Ohio-3191 (Ross June 17, 2003); *Hartfield v. Toys "R" Us,* 2003-Ohio-2905 (Lucas June 6, 2003); *Reese v. Hartford Fire Ins. Co.,* 2003-Ohio-4269 (Summit August 13, 2003); *Hans v. Hartford Ins. Co.* 2003-Ohio-3045 (Hamilton June 13, 2003); *Kohntopp v. Hamilton Mut. Ins. Co.,* 2003-Ohio-2793 (Wood May 30, 2003); *Hellman v. Motorists Mut. Ins. Co.,* 2003-Ohio-2671, 153 Ohio App.3d 405, 794 N.E.2d 688 (Putnam May 23, 2003); *Cincinnati Ins. Co. v.. Torok,* 2003-Ohio-1764, 152 Ohio App.3d 398, 787 N.E.2d 1257 (Jefferson March 31, 2003); *Adams v. Fink,* 2003-Ohio-1457 (Ross March 21, 2003); *Straubhaar v. Cigna Prop. & Cas. Co.,* 2002-Ohio-4791 (Cuyahoga Sept. 12, 2002); *Musser v. Musser,* 2003-Ohio-1440 (Adams March 19, 2003); *McCollum v. Continental Insurance Co.,* 1993 Ohio App. Lexis 2022 (Lucas 1993); *White v. The Ins. Co. of the State of Pennsylvania,* 2003 U.S. Dist. Lexis 16127 (N.D.Ohio August 5, 2003); *Lafferty v. Reliance Insurance Company,* 109 F.Supp.2d 837 (S.D.Ohio 2000); *Dolly v. Old Republic Ins. Co.,* 200 F.Supp.2d 823 (N.D.Ohio 2002); *Platte v. Ford Motor Co.,* 2002 U.S. Dist. Lexis 26274 (N.D. Ohio June 18, 2002); *MacDonald v. Pacific Employers Ins. Co.,* 2002 U.S. Dist. Lexis 26252 (N.D.Ohio July 26, 2002)

A number of courts have analyzed General Motors' Program and held R.C. 3937.18 does not apply because General Motors' policies are not insurance. *See Churchill v. General Motors Corporation,* 2003-Ohio-4001 (Butler Jan. 28, 2003); *Rutlin v. National Union Fire Insurance Co. of Pittsburgh. PA,* 2003 U.S. Dist. Lexis 6928 (S.D. Ohio April 22, 2003); *Redd v. National Union Fire Ins. Co. of Pittsburgh. PA,* 241 F.Supp.2d 819 (S.D.Ohio 2003); *Fonseca v.. Fetter,* 2001 Ohio Misc. Lexis 4 (Lucas C.P. June 15, 2001); *Nickell v. Schopp,* Case No.: 02-156-H (Richland C.P. March 14, 2003) (Henson, J); *Helton v. Young,* Case No.: 01 CV 35004 (Defiance C.P. June 18, 2003); *Rodriguez v. Maloney,* Case No. CI 01-4866 (Lucas C.P. August 28, 2003).

*The Bankruptcy Clause Does Not Shift General Motors' Risk To National Union.*

[2] Plaintiff argues General Motors is not self-insured because of a bankruptcy clause in the fronting policies and the hypothetical possibility that General Motors could file for bankruptcy. The cases discussed by plaintiff are distinguishable from this case. The cases cited by plaintiff do not discuss or address security or collateral.

If General Motors fails to satisfy its obligations to National Union under the Program, (because of bankruptcy or any other reason), the Program provides security. General Motors established a Trust with National Union as the beneficiary. No risk is shifted to National Union even if General

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 22881538 (Ohio Com.Pl.))

Page 8

Motors files bankruptcy, because claims can be paid from the Trust.

**\*6** In *Delong v. Myers,* 2003-Ohio-2702 (Knox May 27, 2003), the Fifth Appellate District rejected the same bankruptcy argument because the fronting policies in that case, like General Motors' fronting policies in this case, had collateral that protects the fronting company if bankruptcy is filed. The Fifth Appellate District has rejected plaintiff's "bankruptcy" argument for fronting policies that are supported by collateral. General Motors' fronting policies have collateral. Bankruptcy cannot shift General Motors' risk. [FN7]

> FN7. Moreover, plaintiff's bankruptcy argument is based upon the *hypothetical* risk that General Motors could or might file bankruptcy in the future. But, General Motors has never filed bankruptcy. The hypothetical risk that General Motors could file bankruptcy does not transform its Program into "insurance," See *Landers v. Lucent Technologies. Inc.,* 2003-Ohio-3326, ¶ 14 (Cuyahoga July 9, 2003) ("Nevertheless, Lucent is not currently in bankruptcy and we must assume in the absence of argument or fact to the contrary that it is able to satisfy the full amount of its deductible under the Reliance National policy.")

*National Union's Right For Indemnity Or Reimbursement Does Not Change If General Motors Files Bankruptcy.*

Plaintiff's bankruptcy argument is based upon an unstated suggestion that bankruptcy is equivalent to default under the Program. However, if General Motors files bankruptcy, there is no evidence that it would default on its obligations to National Union under the Program. Bankruptcy would not affect National Union's right of indemnification. Whether General Motors filed for liquidation under Chapter 7 or reorganization under Chapter 11, National Union's right of indemnification would not be destroyed. National Union could assert a claim as a creditor in the bankruptcy. National Union does not lose its right to reimbursement in bankruptcy. The Program does not shift General Motors' liability risk to National Union in bankruptcy.

Also, the bankruptcy clause cited by plaintiff pertains to *National Union's* obligation if General Motors files bankruptcy. However, plaintiff does not reference any language that eliminates *General Motors'* obligations under the Program if General Motors files bankruptcy. If General Motors files for bankruptcy, General Motors still has the legal obligation to indemnify or reimburse National Union and National Union may assert its right of indemnification as a creditor in the bankruptcy estate.

National Union's right to be reimbursed or indemnified is not eliminated by bankruptcy. Therefore, the hypothetical possibility that General Motors could file for bankruptcy does not transfer risk from General Motors to National Union.

*Bankruptcy Is Not An Underwriting Risk*

The "risk" that General Motors will file bankruptcy is not an underwriting risk that is shifted to National Union. National Union did not insure against General Motors filing bankruptcy, Bankruptcy does not shift liability risk to National Union.

Moreover, the same bankruptcy "risk" raised by plaintiff in this case, existed for the parties that were before the Ohio Supreme Court in *Grange Mut. Cas. Co. v. Refiners Transport and Terminal Corp.,* 21 Ohio St.3d 47, 487 N.E.2d 310 (1986). In *Grange,* Refiners Transport was responsible for paying any automobile liability claims. American Casualty guaranteed their payment. If American Casualty was ever required to pay on behalf of Refiners Transport, Refiners Transport was required to reimburse American Casualty. That is the identical arrangement between National Union and General Motors.

**\*7** The same "risk" of bankruptcy plaintiff argues exists regarding General Motors, also existed with Refiners Transport. Refiners Transport could have filed bankruptcy. However, the Ohio Supreme Court held Refiners Transport was self-insured in the practical sense. Refiners Transport was "ultimately responsible" for paying claims against it. So too is General Motors, regardless of any potential bankruptcy issues.

*A. Surety Arrangement Does Not Become "Insurance" If The Principal Files Bankruptcy Or Becomes Insolvent.*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 22881538 (Ohio Com.Pl.))

Page 9

Plaintiff argues a self-insured fronting program becomes "insurance" because of a "risk" of bankruptcy. If that were true, a financial responsibility bond or a surety also would be "insurance." With a bond, the only "risk" facing the surety is the insolvency of the principal. A surety has the full right of recourse against the principal for any payment made to a third party under the bond. *See Republic-Franklin Ins. Co. v. Progressive as. Ins. Co.*, 45 Ohio St.2d 93, 95, 341 N.E.2d 600 (1976) ("If the surety is compelled to make payment for damages caused by the principal, it has the right to seek reimbursement from the principal."). Thus, the only "risk" facing the surety is that the right of reimbursement could become worthless if the principal became insolvent. However, that does not make it "insurance." [FN8]

FN8. A self-insured fronting program is essentially a surety or bond arrangement. *See Gilchrist v. Gonsor*, 2003-Ohio-2297, at ¶ 25 (Cuyahoga May 8, 2003) (dissenting opinion) ("At bottom, the fronting agreement in this case is no different in practical effect from a surety bond which is approved as a form of self-insurance. A surety is one who agrees to pay money or do any other act in the event that the principal fails to perform an act as set forth in the surety agreement. This means that the self- insured bears the burden of meeting any financial obligations that might arise in the event of a motor vehicle accident, and the surety acts to guarantee payment in the event the self-insured is unable to meet those obligations. The fronting agreement in place between USF & G and United Rentals operates in exactly the same manner as a surety agreement. USF & G has no liability unless and until United Rentals is unable to meet its deductible."); *Churchill v. General Motors Corporation*, Case No. CV00 10 2100 (Butler C.P. April 9, 2002), *aff'd*, 2003-Ohio-4001 (Butler July 28, 2003) ("Unlike regular 'insurance' policies which shift the risk of loss from the insured to the insurer, fronting policies have no transfer of risk. With fronting policies the risk remains with the insured not the insurer; *the insurer functions solely as a surety* when the insured is unable to pay a liability owned to a third party, and the insured agrees to reimburse the insurer for any payments the insurer makes.") (emphasis added). *See also Air Liquide America Corp. v. Continental Cas. Co.*, 217 F.3d 1272, 1274 (10th Cir.2000) ("the deductible ($1M) is exactly equal to the policy limits ($1M). Thus, it is actually a form of self-insurance, under which Air Liquide is responsible for its own losses and CIGNA acts merely as surety that Air Liquide will be able to pay any judgment covered under the policy. Such arrangements are known as 'fronting' policies.")

Although the "risk" of insolvency or bankruptcy exists with a surety bond, the bond is not insurance. Even if the Program is considered a surety bond arrangement, R.C. § 3937.18 does not apply. It is not insurance.

*The Ohio Financial Responsibility Is Not An Issue In This Case And Is Not Relevant To Whether R.C. § 3937.18 Applies To General Motors' Program.*

[3] Plaintiff argues R.C. § 3937.18 must apply to General Motors' self- insured Program because General Motors does not have a Certificate of Self-Insurance. The Court disagrees. The Ohio Supreme Court stated the law in its syllabus:

The uninsured motorist provisions of R.C. 3937.18 do not apply to either self-insurers or financial responsibility bond principals.

*Grange Mut. Cas. Ins. Co. v. Refiners Transport & Terminal Corp.*, 21 Ohio St.3d 47, 487 N.E.2d 310 (1986). The Ohio Supreme Court resolved any question about whether its holding applies to all forms of self-insurance, or only to those that satisfy the Financial Responsibility Statute.

As such, it [Refiners] was not a "self-insurer" in the legal sense contemplated by R.C. 4509.45(D) and 4509.72, but rather *in the practical sense* in that Refiners was *ultimately responsible* under the term of its bond either to a claimant or the bonding company in the event the bond company paid any judgment claim.

*See Grange*, at 49, 487 N.E.2d 310 (emphasis added).

*Grange* applies to all self-insurers, not just those that comply with the Financial Responsibility

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 22881538 (Ohio Com.Pl.))

Page 10

Statute. As the Ohio Supreme Court stated, an entity is self-insured "in the practical sense" if it is "ultimately responsible" for paying its claims. *Id.* at 49. *Grange* holds that self-insurance, including self-insurance "in a practical sense" (as opposed to the Financial Responsibility Statute's legal sense), is not subject to R.C. § 3937.18. This is because *any* form of self-insurance (i.e. risk retention) is not "insurance."

*General Motors Was Not Required to Show Proof Of Financial Responsibility For This Accident.*

**\*8** The issue of compliance or non-compliance with the Financial Responsibility Statute is misplaced for another reason. General Motors did not cause the accident. The Financial Responsibility statute requires vehicle operators to show proof of financial responsibility in only three situations: 1) when involved in an automobile accident; 2) when the person receives a traffic citation; or 3) when randomly selected by the registrar of the BMV. *See* R.C. § 4509.101(A)(3)(a)(b) & (c). None of these occurred with regard to General Motors and this accident. [FN9]

> FN9. Contrary to plaintiff's suggestion, Chapter 4509 has no effect on R.C. § 3937.18. *See Speelman v. Motorist Mut. Ins. Co.*, 1995 Ohio App. LEXIS 5835, at \*9 (Montgomery Dec. 29, 1995) ("Motorist Mutual would have us construe statutes in the chapter on Financial Responsibility, R.C. Chapter 4509, in connection with R.C. 3937.18. We fail to find any language in the sections in R.C. Chapter 4509 that would have any effect on R.C. 3937.18.").

General Motors' ability or inability to comply with the Financial Responsibility Statute is not at issue in this case. Moreover, even if General Motors' self-insured Program did not comply with the Ohio Financial Responsibility Statute, the Statute expressly provides for specific civil penalties. Failure to maintain proof of financial responsibility can result in suspension of a person's operating privileges and impoundment of the person's license. *See* R.C. § 4509.101(A)(1)(b).

This Court cannot impose a "penalty" of imputing statutory UIM payments upon General Motors' self-insured Program for failure to comply with the Financial Responsibility Statute. If the Program did not comply with the Financial Responsibility Statute (which is an issue that is not before this Court), the General Assembly has already determined the penalty.

*The Financial Responsibility Statutes Permit Entities To Comply In Many Different Ways.*

The Financial Responsibility Statute is contained in R.C. § 4509.101. In R.C. § 4509.101(G)(1), the statute identifies 5 ways a person or entity may show proof of financial responsibility. These methods include a certificate of proof of financial responsibility; liability insurance; a bond; a certificate of deposit, money or securities; or a certificate of self-insurance. The statute expressly states that a person *may* show proof of financial responsibility by using these methods. *See* R.C. § 4509.101(G)(1). They are not the exclusive methods.

Chapter 4509 specifically states that proof of financial responsibility may be demonstrated by methods other than those outlined in Subsection (G)(1):

> If a person fails to demonstrate proof of financial responsibility in a manner described in division (G)(1) of this section, such person may demonstrate proof of financial responsibility under this section by *any other method* that the court or the bureau, by reason of circumstances in a particular case, may consider appropriate.

*See* R.C. § 4509.101(G)(2) (emphasis added). Contrary to plaintiff's claim, General Motors was not required to obtain a certificate of self-insurance or demonstrate proof of financial responsibility by any specific means.

Whether General Motors did or did not comply with the Financial Responsibility Statute--or how it complied, if it did--is not relevant. The only issue that is relevant, is whether National Union provided insurance to General Motors. General Motors is ultimately responsible for paying all claims. It shifted no risk to National Union. Because General Motors' Program is not insurance, R.C. § 3937.18 does not apply.

*Plaintiff Does Not Qualify As An "Insured" For UIM Payments Under The Terms Of The Primary*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 22881538 (Ohio Com.Pl.))

Page 11

*Fronting Policy.*

**\*9** [4] Because R.C. § 3937.18 does not apply to General Motors' self-insured Program, statutory UM/UIM protection cannot be imputed to the fronting policies. However, plaintiff is not eligible for payments for another reason. Plaintiff is not an "insured." General Motors' Program does not define "insured" as "You." Unlike the policy in *Scott-Pontzer*, General Motors' definition of "insured" is *not* ambiguous. It does not use the ambiguous "You." The UM/UIM Endorsement in the Primary fronting policy defines an "insured" for UIM purposes as:
B. Who Is An Insured
1. If the Named Insured is designated in the Declarations as:

\* \* \*

b. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
(1) Anyone occupying a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
(2) Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."
*See* UM/UIM Endorsement, Section B(1)(b). The definition of "insured" that the Supreme Court found to be ambiguous in *Scott-Pontzer*, is not the same definition used in General Motors' fronting policies. Plaintiff can only be eligible for UIM payments if she is an "insured." Plaintiff can only be an "insured" if she is occupying a "covered auto." General Motors' definition of "insured" is not ambiguous. *See Price v. Avers*, 2002-Ohio-5479 (Stark Oct. 7, 2002) (holding the identical definition of "insured" is not ambiguous and that *Scott-Pontzer* does not apply); *Egelton v. U.S. Fire Ins. Co.*, 2002-Ohio-6176 (Stark Nov. 12, 2002) (same).

The Declaration Page for the Primary fronting policy designates the type of vehicle that is a "covered auto." For UIM payments, the Declaration Page indicates that a "covered auto" is designated as "Symbol 10." "Symbol 10" is defined in the Covered Auto Designation Symbol Endorsement as:
Only those "autos" owned by General Motors Corporation. This includes those "autos" General Motors Corporation acquires ownership of after the policy begins.
*See* Covered Auto Designation Symbol Endorsement.

Plaintiff argues "if anyone was occupying a covered auto they are insured." However, plaintiff was not occupying a covered auto. A covered "auto" is defined in the policy as "only those 'autos' owned by General Motors Corporation." The vehicle involved in this accident was owned by the tortfeasor's mother, Lisa Smith. It is undisputed that plaintiff was not occupying a vehicle owned by General Motors at the time of this accident. Therefore, plaintiff is not an "insured" under the definition in the policy. Because plaintiff is not an "insured" under the policy language, and because the definition of "insured" is not ambiguous and does not use the ambiguous *Scott-Pontzer* "You," summary judgment in favor of General Motors is appropriate.

*Conclusion.*

**\*10** In this case, the facts are clear. General Motors retains its risk with its fronting policies. The law is clear. The Ohio UM/UIM statute does not apply to self-insurers. Therefore, R.C. 3937.18 does not apply to General Motors' self-insured fronting policies. Moreover, the policy's definition of "insured" is not ambiguous and plaintiff does not fall within the definition of an "insured" under the policy. Accordingly, the summary judgment motions file by General Motors and National Union are hereby GRANTED. The summary judgment motion filed by plaintiff against National Union is DENIED. All claims against National Union and/or General Motors are hereby dismissed with prejudice.

This decision adjudicates fewer than all claims or rights and liabilities of fewer than all of the parties. Pursuant to Civil Rule 54(B), the Court determines that there exists no just reason for delay and final judgment is hereby entered in favor of General Motors Corporation and National Union Fire Insurance Company of Pittsburgh, PA and against plaintiffs. Pursuant to Rule 58, the Clerk shall enter this judgment upon the journal and shall serve all parties with a copy of the judgment as well as notice of the judgment and its date of entry upon the journal.

IT IS SO ORDERED.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy  
**(Cite as: 2003 WL 22881538 (Ohio Com.Pl.))**

Page 12

2003 WL 22881538 (Ohio Com.Pl.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works