| | |
|---|---|
| STATE OF OHIO | ) IN THE COURT OF COMMON PLEAS |
| | ) SS. |
| COUNTY OF CUYAHOGA | ) Civil Case No. 477785 |
| | ) |
| | ) **JOURNAL ENTRY AND** |
| | ) **OPINION** |
| REGINA BIBBY | ) |
| Plaintiff, | ) |
| Vs. | ) |
| NATIONWIDE INSURANCE COMPANY, et al. | ) |
| Defendants. | ) |

**Kathleen Ann Sutula, J:**

IT IS SO ORDERED:

This case comes before the Court on the parties' cross motions for summary judgment and briefs in response thereto, on the issue of the rights and obligations under an insurance policy issued by Defendant National Union Fire Insurance Company (hereinafter "National Union") to National Service Industries, Inc. ("NSI"), as well as the rights and obligations under a personal automobile insurance policy issued to Plaintiff (also referred to as "Bibby") by Defendant Nationwide Insurance Company ("Nationwide").[1]

The Court sets forth the facts, for purposes of summary judgment, as follows.

On January 27, 2001, Bibby was involved in an accident while driving a 1998 Ford Escort. On that date, David Murin ("Murin") struck Bibby's vehicle with his 1999 Ford Taurus. Murin had automobile insurance from Progressive Insurance Co., with

---

[1] The National Union policy number is RM CA 534-80-33; the Nationwide policy number is 92 84 A 981414.

liability limits in the amount of $12,500. Plaintiff's personal insurance had uninsured/underinsured motorist coverage in the amount of $25,000/$50,000.

At the time of this event, Bibby was an employee of Lithonia Lighting ("Lithonia), which was a division of NSI. The National Union policy contained an automobile liability policy with liability limits of $3,000,000 for "any auto," as well as a general liability policy having liability limits of $3,000,000.

As a result of this accident, Plaintiff incurred medical expenses in excess of $17,000 and lost wages in the amount of $3,900. Bibby, seeking underinsured motorist claims, presented a claim to Nationwide, which refused it. Nationwide's position is that Bibby's coverage is to be prorated with any other available UM/UIM coverage, namely the National Union policy. National Union, however, claims that UM/UIM coverage has been rejected on its policy. Based upon these rejections, Bibby eventually did accept Murin's policy limits on February 19, 2002.

1. **Summary Judgment Standard**

Under Civil Rule 56, summary judgment is proper when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344.

Substantive law determines which facts are material. Kemper v. Builder's Square (1996), 109 Ohio App.3d 27, 132, citing Anderson v. Liberty Lobby, Inc. (1986), 477

U.S. 242, 248. Accordingly, this Court turns to O.R.C. §3937.18 as well as the case law that interprets that section.

## II. National Union's Claim that NSI is Self-Insured

It is well settled at this point that O.R.C. §3937.18 is inapplicable with respect to self-insurers. *Grange Mutual Casualty Co. v. Refiners Transport & Terminal Corp.* (1986), 21 Ohio St.3d 47. In fact, the Ohio Supreme Court has stated, and courts have applied this holding, that those who are self-insured "in the practical sense" are not required to adhere to the requirements of Section 3937.18. *Id.*, 21 Ohio St.3d at 49.

In the case before the Court, National Union's policy issued to NSI had liability limits of $3,000,000, with a $500,000 deductible. Under this policy, National Union "fronts" protection for NSI, who must then reimburse National Union up to the amount of the deductible.

As is often the case, there is a divergence in the case law as to whether these types of fronting agreements do make an entity a self-insurer in the practical sense. This Court elects to take the approach espoused in *McCollum v. Continental Ins. Co.* (1993), Lucas App. No. L-92-141, *Lafferty v. Reliance Ins. Co.* (S.D.Ohio 2000), 109 F.Supp.2d 837, and their progeny. The use of the phrase "practical sense" in *Grange* is indicative that the Ohio Supreme Court saw fit to obviate the necessity for a company to fully comply with the requirements of O.R.C. §4509.45 when the risk of loss does not shift back to the insurance company. See *Kohntopp v. Hamilton Mut. Ins. Co.*, (6th Dist. 2003), 2003 WL 21255940, 2003-Ohio-2793; *Cincinnati Ins. Co. v. Torok* (7th Dist. 2003), 2003-Ohio-1764; *Adams v. Fink* (4th Dist. 2003), 2003-Ohio-1457; *Dalton v. Travelers Ins. Co.* (5th Dist. 2002), 5th Dist. Nos.2001CA00380, 2001CA00407, 2002-Ohio-7369; *Pelc v.*

*Hartford Fire Ins. Co.* (5th Dist. 2002), 5th Dist.2002CA00142, 2002-Ohio-764; *Rupple v. Moore* (5th Dist. 2002), 5th Dist. No. 02-COA-003, 2002-Ohio-4873; *Straubhaur v. Cigna Property & Cas. Co.* (8th Dist. 2002), 8th Dist. No 81115, 2002-Ohio-4791; *Musser v. Musser* (4th Dist. 2002), 4th Dist. No. 02CA750.

The typical case, however, with respect to self-insurers and fronting agreements involves policies with deductibles matching the liability limits. See e.g., *Straubhaar*, 2002-Ohio-4791. Case law, however, in the UM/UIM field has proved to be quite fluid, and a new line of jurisprudence is developing in cases where there is a fronting agreement with a non-matching deductible.

In a recent decision, the Fifth District Court of Appeals held that a company that agreed to reimburse the insurance company for payments made by the insurance company under the policy up to the deductible was self-insured for the amount of the deductible. *Jordan v. Travelers Property Cas. Ins. Co.* (5th Dist. 2003), 2003 WL 1257084, 2003-Ohio-1309. As that Court held, "Therefore, R.C. 3937.18 does not apply up to [the deductible] but does apply to the amounts over [the deductible]. In other words, the UM/UIM coverage would be for damages after they exceeded [the deductible] and only to the extent the damages did not exceed the...limit of the commercial auto liability policy." *Jordan*, at ¶56.

In light of the established precedents, in the case before the Court, NSI is self-insured up to $500,000 pursuant to the fronting agreement issued by National Union. This determination is reached by virtue of the fact that NSI must reimburse National Union for the amount that falls below the deductible. Section 3937.18, therefore, does not apply in this case if damages fall below that amount. As a result, Bibby is not entitled

4

to recover on her UM/UIM claim against National Union if her damages do not exceed the $500,000 deductible. NSI's and National Union's rejection of her UM/UIM coverage was merely a matter of contract and not governed by Ohio UM/UIM law.

## III. National Union's Rejection Form

Assuming *arguendo* that the requirements of §3937.18 do govern National Union's obligations to Bibby, National Union contends that NSI rejected UM/UIM coverage.

The Ohio Supreme Court has outlined what constitutes a valid rejection of UM/UIM coverage. First, there must be a written offer of UM/UIM coverage. *Gyori v. Johnston Coca-Cola Bottling Group* (1996), 76 Ohio St.3d 565, 568. The Court has further held that there must be (1) a brief description of the coverage, (2) the premium for the coverage, and (3) the available limits. *Linko v. Indemnity Ins. Co. of North America* (2000), 90 Ohio St.3d 445. Moreover, the Court held that "[t]he four corners of the insurance agreement control in determining whether the waiver was knowingly and expressly made." *Id.*, 90 Ohio St.3d at 450.

In analyzing National Union's rejection form, it is undisputed that it is in writing and contains a brief description of coverage. *See e.g.*, Plaintiff's Brief in Opp. to National Union's Motion, p.7. By the same token, it is axiomatic that the rejection form itself does not expressly contain the premium for coverage or the available limits.

*Linko*, however, is quite clear in that the insurance agreement as a whole, and not just the rejection form, is to be used in determining whether there was a valid rejection of UM/UIM coverage. The rejection form provides, in pertinent part, that NSI could

> select a limit of Uninsured Motorists/Underinsured Motorists Coverage which is equal to the limit of Bodily

5

> Injury Coverage in this policy, to reject the Uninsured
> Motorists/Underinsured Motorists Coverage or to select a
> limit for such coverage lower than the limit for Bodily
> Injury Coverage in the policy.

*See* National Union's Motion for Summary Judgment, Ex. 4.  Using this language in conjunction with the Declarations Page of the CA Policy and the Large Risk Rating Plan Endorsement, the Court finds that National Union satisfied the remaining *Linko* elements since there is an offer of available coverage and the premiums when the policy is examined in its entirety.  See e.g., *Davis v. United States Fidelity and Guaranty Co.* (N.D. Ohio, November 18, 2002), No 1:01CV022708.

Even if the Court were to find that the four corners of the National Union policy does not comport with *Linko*, the Ohio Supreme Court now permits parties to introduce extrinsic evidence to prove a valid rejection of UM/UIM coverage. *Kemper v. Michigan Millers Mutual Ins. Co.* (2002), 98 Ohio St.3d 162.  In answering certified question number two, the Ohio Supreme Court held that a signed rejection form was not an effective declination of coverage "where there is no other evidence, oral or documentary, of an offer of coverage." *Id.*, 98 Ohio St.3d at 162.  It necessarily, follows, therefore that a signed rejection form where there *is* other evidence of an offer is an effective rejection.  See *Manalo v. Lumberman's Mut. Cas. Co.*, (2nd Dist. 2003), 2003-Ohio-613; *Bogan v. Johnson* (Clinton Com. Pl. 2003), 2003-Ohio-1981.

In the case before the Court, National Union has introduced extrinsic evidence that National Union offered NSI UM/UIM coverage, the premium for that coverage was included, NSI historically intends to reject such coverage, and that the NSI agent was authorized to reject the coverage. *See* National Union's Motion for Summary Judgment,

6

Ex. 3. When this affidavit is taken together with the signed rejection form, there is little doubt that NSI effectively rejected UM/UIM coverage.

Moreover, the extrinsic evidence now allowed for by *Kemper*, and introduced by National Union by way of the affidavit supporting its summary judgment motion, is sufficient to overcome Bibby's argument that Lithonia did not validly reject coverage because an offer was not made to this subsidiary of NSI. Bibby, however, is not able to rebut the assertion that "National Union offered UM/UIM coverage to NSI and its subsidiaries" and that the NSI representative "was authorized to reject UM/UIM coverage on behalf of NSI and its subsidiaries, including Lithonia Lighting..." *See* National Union's Motion for Summary Judgment, Ex. 3 at ¶¶6,9.

The rejection form, therefore, is valid, and the rejection of UM/UIM coverage is effective.

## IV.  The Primary Pro-Rata Coverage Issue

Although Bibby is not entitled to UM/UIM coverage from National Union for the reasons stated above, assuming that National Union's policy was available to Bibby, there is the remaining matter of whether that policy would be excess to Bibby's personal UM/UIM coverage provided by Nationwide. Nationwide concedes that its coverage is primary, but it also argues that National Union's policy is primary pro-rata coverage as well. *See* Nationwide's Motion for Summary Judgment, p.11.

Once again, the case law in this area has proven to be quite conflicting, with some courts holding that *Scott-Ponzter* coverage is not primary, see *Van Hurman v. Nationwide Mut. Ins. Co.* (Hamilton C.P. June 11, 2002), Case No. A-0106738; *Justus v. Allstate Ins. Co.* (Franklin C.P. September 17, 2001), Case No. 00CVC07-6742, while other courts

7

have decided to the contrary. See *Bertsch v. Nationwide Mut. Ins. Co.* (Richland 2003), 2003-Ohio-1105; *Shaw v. State Farm Ins. Co.* (Cuyahoga 2002), No. 80471.

Following the Ohio Supreme Court's determination in *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio. St.3d 660, that the use of the term "you" in the insurance policy in that case was ambiguous, the trend among Ohio's appellate courts is to find that when "you" is ambiguous, that ambiguous definition must be applied throughout the entire insurance policy.

In analyzing this issue, the Court first notes that National Union's policy does not explicitly mention other UM/UIM motorist coverage. The National Union Policy simply states, "...insurance provided by this Coverage Form is excess over any other collectible insurance." See National Union's Motion for Summary Judgment, Ex. 1. The case law, therefore, supports Nationwide's position that this language applies to coverages other than UM/UIM coverage. See e.g., *Myers v. Safeco Ins. Co. of America* (Licking 2000), No.99 CA 00083; *Demetry v. Kim* (Franklin 1991), 72 Ohio App.3d 692. As a result, Nationwide's UM/UIM other insurance clause would be effective since the National Union other insurance clause would be inapplicable. See *Shropshire v. EMC/Hamilton Mut. Ins. Co.* (Montgomery 2001), 2001 WL 1173334. Nationwide, therefore, would be liable on a pro-rata basis.

In addition, even if National Union's other insurance clause were to be given full force, the effect of *Scott-Pontzer* is of importance due to the fact that the "you" mentioned in National Union's policy must be defined as ambiguous and, therefore, the definition must include Bibby. Since Bibby did own her auto, National Union's clause

would not be applicable. This would have the effect of making National Union's policy primary, thus making both Nationwide and National Union liable on a pro-rata basis.

Of course, this result only occurs if Bibby were entitled to UM/UIM coverage from National Union, which the Court has determined she is not for the reasons discussed in the prior sections.

## V. Conclusion

It is, therefore, ORDERED, ADJUDGED, and DECREED:

For the reasons previously stated, National Union's Motion for Summary Judgment is well taken. The Court grants National Union's Motion for Summary Judgment, denies Plaintiff's Motion for Summary Judgment Against National Union, and denies Nationwide's Motion for Summary Judgment.

The claims against National Union are dismissed with prejudice.

Plaintiff's claims against Nationwide remain pending.

PARTIAL.

DATE: June 10th, 2003

_KB Sutula_
KATHLEEN ANN SUTULA, JUDGE

## CERTIFICATE OF SERVICE

A copy of the foregoing Journal Entry and Opinion has been sent via fax and regular U.S. mail on this 11th day of June, 2003, to the following:

**Attorney for Plaintiff**
Kevin L. Lenson
Friedman, Domiano & Smith Co., L.P.A.
6th Floor, Standard Building
1370 Ontario Street
Cleveland, OH 44113
Fax Number: (216)621-4008

**Attorney for Nation Union**
Steven G. Janik
Janik & Dorman, L.L.P.
9200 South Hills Blvd., Suite 300
Cleveland, OH 44147
Fax Number: (440)838-7601

**Attorney for Nationwide**
Kirk. E. Roman
50 S. Main Street, Suite 502
Akron, OH 44308
Fax Number: (330)253-8875