IN THE COURT OF COMMON PLEAS
STARK COUNTY, OHIO

FILED
MAY 05 2003
PHIL G. GIAVASIS
STARK COUNTY OHIO
CLERK OF COURTS

| | | |
|---|---|---|
| PAULINE HENZEL | ) | CASE NO. 2002 CV 00842 |
| | ) | |
| PLAINTIFF | ) | JUDGE REINBOLD |
| | ) | |
| VS. | ) | |
| | ) | JUDGMENT ENTRY |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA | ) | |
| | ) | |
| DEFENDANT | ) | |

This matter is before the Court upon Plaintiff's and Defendant's Motions for Summary Judgment filed pursuant to Civil Rule 56. The Ohio Supreme Court has clearly set forth the standard for summary judgment:

> A summary judgment shall not be rendered unless is appears from such evidence or stipulation and only there from, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
>
> The inferences to be drawn from the underlying facts contained in the affidavits and other exhibits must be viewed in the light most favorable to the party opposing the motion, and if when so viewed reasonable minds can come to differing conclusions the motion should be overruled. *Hounshell v. American States Insurance Co.* (1981), 67 Ohio St.2d 427, 433. *See also Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150.

Additionally the Ohio Supreme Court in *Dresher v. Burt* (1996), 75 Ohio St. 3d 280, 292 stated:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Construing the pleadings, exhibits, affidavits and briefs of counsel most strongly in favor of the nonmoving party, the Court finds that there remains no genuine issues of fact and concludes the following.

The facts are as follows. Patricia Henzel (hereinafter "Henzel") was injured in a motor vehicle accident caused by the negligence of William Taylor (hereinafter "Taylor") on March 23, 2000. Taylor was insured for automobile liability by Motorists Mutual Insurance Company. Henzel has recovered $100,000 from Taylor.

On the date of the accident, Henzel was employed by Diebold, Inc. Diebold, Inc. was a named insured under two policies of insurance issued by National Union Fire Insurance Company of Pittsburgh, PA (hereinafter "National Union"). The first policy is an automobile liability policy (RMCA 320-97-72) with liability limits of $1 million. National Union states that Diebold, Inc. retains the risk of loss under this policy up to a $250,000 self-insured retention. National Union further states that on March 1, 2000, an authorized representative of Diebold, Inc. reduced the amount of UM/UIM coverage available under the automobile liability policy to $12,500 per person and $25,000 per accident. The second policy is an umbrella liability policy (BE 357-35-30) with liability limits of $25 million. The umbrella policy contains an Ohio Uninsured Motorists Coverage – Option Form which allegedly rejects UM/UIM coverage.

Henzel asserts that she is entitled to UM/UIM coverage under the above-mentioned policies pursuant to *Scott-Pontzer v. Liberty Mutual Ins. Co.*, 85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116 and its progeny. The National Union policies were effective from March 1, 2000 to March 1, 2001 (automobile liability) and March 1, 1998 to March 1, 2001 (umbrella liability). I find that based on the effective dates of the policies and the date of accident, the post-H.B. 261 version of R.C. § 3937.18 is applicable to the following analysis.

A. NATIONAL UNION AUTOMOBILE LIABILITY POLICY

I will first determine whether Henzel is entitled to UM/UIM coverage under the National Union automobile liability policy. National Union argues that the automobile liability policy is not subject to the requirements of R.C. 3937.18 because "Diebold retains the risk of loss up to its Self-Insured Retention ('SIR') under the indemnity agreements issued as part of the Diebold Risk Management Program ('Program') including a Large Risk Rating Plan ('LRRP')." (Defendant's Motion for Summary Judgment, page 3). Henzel argues that the National Union is not a "fronting policy" and therefore not exempt from the requirements of R.C. 3937.18.

I find the Fifth District has examined this issue in *Dalton v. The Travelers Ins. Co.*, 5th Dist. Nos. 2001CA00380, 2001CA00393, 2001CA00407, 2001CA00409, 2002-Ohio-7369. In that case, the Court was presented with a similar National Union automobile liability policy. The employer in *Dalton* had a commercial automobile liability policy which had the limits of $2 million. Under a payment agreement, the employer was responsible for each payment made under the policy, up to $500,000 for the commercial automobile liability policy. The Court held that an employer was self-insured in the practical sense, in part, when, as part of an insurance agreement, the employer agreed to reimburse the insurance company for payments made by the insurance company under the policy up to the retained amounts and to provide a promissory note and security as collateral. *Dalton*, supra; *Jordan v. Travelers Property Casualty Ins. Co.*, 5th Dist. No. 2002CA00248, 2003-Ohio-1309.

In the present case, I find that Diebold, Inc. has a similar insurance agreement. The National Union automobile liability policy has a $1 million limit. The payment agreement and large risk rating plan endorsement make Diebold, Inc. responsible upon billing for each payment made under the policy, up to $250,000. See Exhibits 6 and 7, filed with National Union's

3

November 15, 2002 Motion for Summary Judgment. In order to secure the amounts to be paid, Diebold, Inc. is required to provide collateral. As the Court in *Dalton*, I find that by agreeing to reimburse and provide security, Diebold, Inc. is a self-insured up to the self-insured retention amount of $250,000. As further held in *Dalton*, I find that Diebold, Inc. is insured in the traditional sense for the remaining $750,000 of the National Union automobile policy. Accordingly, R.C. 3937.18 applies to the remaining $750,000.

The next issue to be determined is whether Diebold, Inc. validly reduced their UM/UIM coverage pursuant to *Gyori v. Johnston Coca-Cola Bottling Group, Inc.* (1996), 76 Ohio St.3d 565, *Linko v. Indemnity Ins. Co. of N. Am.* (2000), 90 Ohio St.3d 445, *Kemper v. Michigan Millers Ins. Co.*, 97 Ohio St.3d 162, 2002-Ohio-7101 and *Pillo v. Stricklin*, 5th Dist. No. 2001CA00204, 2001-Ohio-7049. Henzel argues the reduction form does not comply with the requirements of the above case law.

I find persuasive National Union's argument that the Fifth District has also examined this issue in *Dalton*, supra. The National Union insurance policy at issue in Dalton is identical to the National Union policy in the present case. In *Dalton*, the Court found that:

> The rejection in this case is governed by the September 3, 1997 version of R.C. 3937.18. After review, we determine the rejection form conforms to the statute for the following reasons. The form, attached to National's September 24, 2001 Motion for Summary Judgment as Exhibit 7, specifically references the policy, No. RMCA 320-73-73. The rejection is within the policy and therefore the limits referenced in the form are found in the instrument as a whole. The language of the form complies with the mandates of the 1997 revision of R.C. 3937.18. We do not find this determination to be in conflict with *Pillo v. Stricklin*, Stark App. No. 2001CA00204, 2001-Ohio-7049, for the following reasons. The Payment Agreement, attached to National's September 24, 2001 Motion for Summary Judgment as Exhibit 6, establishes that a premium for uninsured/underinsured motorist coverage would not be available because the final payment is calculated on a "Large Risk Rating Plan Endorsement." Further, Collins would be required to pay National all reimbursable amounts according to the terms of the policy. In all other respects, the rejection form is in compliance. *Dalton*, at ¶148.

I find the reduction form in the present case complies with the above analysis. Accordingly, Diebold, Inc. validly reduced its UM/UIM coverage to $12,500 per person and $25,000 per accident.

Finally, it must be determined whether Henzel is an insured under the National Union automobile liability policy. As stated above, I found that Diebold, Inc. validly reduced their UM/UIM coverage. National Union argues that the Drive Other Car Endorsement read in conjunction with the National Union automobile liability policy Declarations, Business Auto Coverage Form and Ohio Uninsured Motorists Coverage Endorsement clearly demonstrates that Henzel is not an insured. I disagree.

First, I will examine the Ohio Uninsured Motorists Coverage Endorsement attached to the National Union automobile liability policy in order to determine whether Henzel is an insured.

The endorsement defines who is an insured as follows:

**B. WHO IS AN INSURED**
1. You.
2. If you are an individual, any "family member".
3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.
4. Anyone else for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

The named insured is listed as "Diebold, Incorporated." I find the "you" to be ambiguous and that Henzel is an insured under the National Union automobile liability policy pursuant to the holding of *Scott-Pontzer*, supra.

This finding is not limited by the "covered auto" limitation in the Declarations page. The policy provides that for uninsured motorists coverage, only symbol "2" autos are considered

5

covered. The definition of a symbol "2" auto is found in the Business Auto Coverage Form. It states as follows:

> Owned "Autos" Only
> Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

I found above that the definition of "WHO IS AN INSURED" was ambiguous according to the rationale of *Scott-Pontzer*, supra; therefore, the definition of "you" includes Henzel. Henzel owned the auto involved in the accident on March 23, 2000. The "covered auto" provision does not limit Henzel's entitlement to UM/UIM coverage.

I further disagree with National Union in regards to the application of the Drive Other Car Coverage Endorsement. That endorsement adds as a Named Insured, in addition to Diebold, Incorporated, "All employees provided with a company car." I find that this additional named insured does not remove the *Scott-Pontzer* ambiguity. The 5th District has rejected this argument in *Still v. Indiana Ins. Co.*, 5th Dist. No. 2001CA00300, 2002-Ohio-1004. It held that "upon reviewing the automobile policy in the instant case, we fail to find that the endorsement to the policy including these two individuals distinguishes this case from *Scott-Pontzer* * * * in that the ambiguity still exists, i.e. the policy still list[s] the corporation as the name[d] insured, thereby extending coverage to the corporation's employees."

Accordingly, based on the above analysis, I find that Henzel is an insured under the National Union automobile liability policy limited by the self-insured retention amount and the UM/UIM coverage reduction amount.

B. NATIONAL UNION COMMERCIAL UMBRELLA LIABILITY POLICY

Henzel states that she is entitled to UM/UIM coverage under the National Union commercial umbrella policy because it is excess to the National Union automobile liability

policy. The National Union commercial umbrella policy specifically identifies the National Union automobile liability policy as one of the "underlying insurances." An umbrella policy is a policy which provides excess coverage beyond an insured's primary policies. 3 Widiss, Uninsured and Underinsured Motorist Insurance (2 Ed.1995) 23, § 32.5. Because I found that Henzel is entitled to UM/UIM coverage under the National Union automobile liability policy, I must next determine whether Henzel is entitled to UM/UIM coverage under the National Union Commercial Umbrella Liability Policy. I first find the Payment Agreement and Large Risk Rating Plan Endorsement do not apply to the commercial umbrella liability policy as it is not listed in the Schedule of Polices. See Exhibit 6, Page 4, filed with National Union's November 15, 2002 Motion for Summary Judgment. While the commercial umbrella liability policy Declarations page does state a $25,000 self-insured retention, there is no evidence before me of a payment agreement as in the automobile liability policy.

National Union argues that the commercial umbrella policy is an excess policy. "Umbrella policies are different from standard excess insurance policies in that they are meant to fill gaps and coverage both vertically (by providing excess coverage) and horizontally (by providing primary coverage). The vertical coverage provides additional coverage above the limits of the insured's underlying primary insurance." *Burkhart v. CNA Insurance Company*, 5th Dist. No. 2001CA00265, 2002-Ohio-903. Henzel does not dispute the National Union commercial umbrella policy is an excess policy. As an excess policy, the National Union commercial umbrella policy only provides vertical coverage.

The commercial umbrella liability policy contains an Ohio Uninsured Motorists Coverage – Option Form. It was signed on February 27, 1998 by an authorized representative. I must now determine whether the Option Form which rejects UM/UIM coverage conforms to the

7

requirements of *Gyori v. Johnston Coca-Cola Bottling Group, Inc.* (1996), 76 Ohio St.3d 565, *Linko v. Indemnity Ins. Co. of N. Am.* (2000), 90 Ohio St.3d 445, *Kemper v. Michigan Millers Ins. Co.*, 97 Ohio St.3d 162, 2002-Ohio-7101 and *Pillo v. Stricklin*, 5th Dist. No. 2001CA00204, 2001-Ohio-7049. In *Gyori, supra*, the Ohio Supreme Court held that there could be no rejection of UM/UIM coverage unless there is a written offer of UM/UIM coverage from the insurance provider. *Gyori*, 76 Ohio St.3d 565, paragraph one of syllabus. *Linko* held that in order to satisfy the written offer requirement, the insurer must: 1) inform the insured of the availability of UM/UIM coverage, 2) set forth the premium for the coverage, 3) include a brief description of the coverage and 4) expressly state the UM/UIM coverage limits in its offer. *Linko*, 90 Ohio St.3d 445, 447-449. Without all four elements, no express and knowing rejection can be made, as a matter of law. *Id.* *Kemper* held that the *Linko* requirements apply to policies written after the enactment of H.B. 261. I find the rejection does not conform to the standards required by those cases as the Option Form does not contain a premium for UM/UIM coverage. The rejection form does not contain all four required elements. I find that the National Union commercial umbrella liability policy rejection form is invalid and therefore, unenforceable.

As the rejection form is invalid, UM/UIM coverage arises by operation of law in an amount equal to the amount of liability insurance provided in the commercial umbrella policy, that being $25 million. *Akron General Medical Ctr. v. James*, (March 25, 2003), 5th Dist. No. 2002CA00009. I further find that in accordance with *Scott-Pontzer*, Henzel is an insured under the UM/UIM coverage which arose by operation of law. *Id.* The language in the National Union commercial umbrella policy limiting coverage to those as defined by the policy in Section IV, Definitions, Subsection E. Insured, is not applicable to the UM/UIM coverage because such coverage arose by operation of law. *Id.* at 12; See also *Brodbeck v. Continental Casualty Co.*

(Feb. 8, 2002), 5th Dist. No. L-01-1269. However, because the National Union commercial umbrella policy is an excess policy, Henzel is not entitled to UM/UIM coverage until she exhausts the underlying coverage.

## C. SETOFF

National Union finally argues that it is entitled to a setoff in the amount of $100,000 representing the payment made under Taylor's automobile liability policy to Henzel. Henzel agrees that National Union is entitled to a setoff in the amount of $100,000. Accordingly, I find that National Union is entitled to a setoff in the amount of $100,000.

Accordingly, it is ORDERED, ADJUDGED, and DECREED that Plaintiff's and Defendant's Motions for Summary Judgment are GRANTED in part and DENIED in part.

This constitutes a final, appealable order. There is no just cause for delay.

IT IS SO ORDERED.

_____
RICHARD D. REINBOLD, JR., JUDGE


### NOTICE TO THE CLERK -- FINAL APPEALABLE ORDER

The Clerk of Courts shall serve upon all parties not in default for failure to appear notice of the judgment and its date of entry upon the journal. Said notice shall be sent within three days of entering the judgment upon the journal. The Clerk shall serve the parties in a manner prescribed by Civ.R. 5(B) and note the service in the appearance docket.

_____
RICHARD D. REINBOLD, JR., JUDGE

cc:   Barry M. Ward, Esq.
      Steven G. Janik, Esq.