# EXHIBIT A

*2002 Ohio 4015, *; 2002 Ohio App. LEXIS 4202, ***

Maria E. Dalton et al., Plaintiffs-Appellants, v. Carmel A. Wilson et al., Defendants-Appellees.

No. 01AP-1014

COURT OF APPEALS OF OHIO, TENTH APPELLATE DISTRICT, FRANKLIN COUNTY

2002 Ohio 4015; 2002 Ohio App. LEXIS 4202

August 8, 2002, Rendered

**PRIOR HISTORY:**    [**1]  APPEAL from the Franklin County Court of Common Pleas.

**DISPOSITION:** Trial court's judgment was reversed and cause was remanded.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs, an injured driver and her husband (the driver), appealed the judgment of the Court of Common Pleas of Franklin County (Ohio) that denied the driver's motion for summary judgment, and granted defendant employer's, and defendant insurance companies' motion for summary judgment in the driver's original claim seeking a declaratory judgment that the driver was an insured under the various insurer's policies.

**OVERVIEW:** On September 3, 1998, a motor vehicle operated by the driver collided with a motor vehicle negligently driven by defendant operator. The driver was insured under an automobile insurance policy issued by defendant insurer number one. At that time, she was employed, but was neither driving a company vehicle, nor acting within the scope of her employment. She filed a complaint seeking compensatory damages for her injuries against the operator, and a declaratory action that she was entitled to uninsured/underinsured motorist (UM/UIM) coverage under three separate policies issued to her employer by insurers two, three, and four. The driver also sought UM/UIM coverage under their own auto and homeowner policies. Insurers two, three, and four filed counterclaims seeking declarations that their policies did not provide UM/UIM coverage and moved for summary judgment. The appellate court found that the trial court erred as a matter of law in finding that the employer was self-insured and that its policy with insurer two was not subject to the requirements of Ohio Rev. Code Ann. § 3937.18. Similarly, insurer's two and three were required to offer UM/UIM coverage.

**OUTCOME:** The judgment was reversed and remanded.

**CORE TERMS:** coverage, self-insurer, self-insured, self-insurance, insured,

deductible, motor vehicle, summary judgment, certificate, fronting, matching, uninsured motorist coverage, financial responsibility, uninsured, entity, dollar, insurer, liability coverage, matter of law, automobile liability policy, premium, assignment of error, truck, granting summary judgment, liability policy, risk of loss, operation of law, policy period, self-retained, declaration

## LexisNexis (TM) HEADNOTES - Core Concepts – ◆ Hide Concepts

Civil Procedure > Summary Judgment > Summary Judgment Standard
*HN1* See Ohio R. Civ. P. 56(C).

Civil Procedure > Summary Judgment > Summary Judgment Standard
*HN2* Summary judgment is appropriate only where the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence mostly strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard
Civil Procedure > Appeals > Standards of Review > De Novo Review
*HN3* In reviewing a trial court's disposition of a summary judgment motion, an appellate court applies the same standard as that applied by the trial court. An appellate court reviews a summary judgment disposition independently and without deference to the trial court's judgment. Thus, in determining whether a trial court properly granted a summary judgment motion, an appellate court must review the standard for granting summary judgment set forth in Ohio R. Civ. P., as well as the applicable law. More Like This Headnote

Insurance Law > Claims & Contracts > Policy Interpretation > Contract Interpretation Rules
*HN4* In Wolfe v. Wolfe (2000), the Ohio Supreme Court held that, pursuant to Ohio Rev. Code Ann. § 3937.31(A), each motor vehicle liability insurance policy issued in this state must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with Ohio Rev. Code Ann. § 3937.30 to 3937.39. The court further held that the commencement of each policy period mandated by Ohio Rev. Code Ann. § 3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy. More Like This Headnote

Insurance Law > Claims & Contracts > Policy Interpretation > Contract Interpretation Rules
*HN5* In order to determine the effective date of the new contract, a court must determine the original issuance date of the policy and count successive two-year policy periods from that date. More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage
Insurance Law > Claims & Contracts > Policy Interpretation > Contract Interpretation Rules

**HN6** ☐ For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties. <u>More Like This Headnote</u>

<u>Insurance Law</u> > <u>Motor Vehicle Insurance</u> > <u>Coverage Generally</u> ☐
**HN7** ☐ In determining whether an entity is self-insured, courts look at who bears the risk of loss. Self-insurance is not insurance; it is the antithesis of insurance. While insurance shifts the risk of loss from the insured to the insurer, self-insurance involves no risk-shifting. Rather, in the self-insurance context, the risk is borne by the one whom the law imposes it. The defining characteristic of insurance, the assumption of specific risks from customers in consideration for payment, is entirely absent where an entity self-insures. Self-insurance is the legal equivalent of no insurance for purposes of the distribution of UM/UIM benefits in accordance with <u>Ohio Rev. Code Ann. § 3937.18(A)</u>. <u>More Like This Headnote</u>

<u>Insurance Law</u> > <u>Motor Vehicle Insurance</u> > <u>Coverage Generally</u> 🔖
**HN8** ⚡ <u>Ohio Rev. Code Ann. § 4509.45(E)</u> and <u>Ohio Rev. Code Ann. § 4509.72</u> set forth the specific requirements for being a self-insurer in the motor vehicle context. <u>Ohio Rev. Code Ann. § 4509.45(E)</u> provides that proof of financial responsibility may be given by filing a certificate of self-insurance, as provided in <u>Ohio Rev. Code Ann. § 4509.72</u>, supplemented by an agreement by the self-insurer that, with respect to accidents occurring while the certificate is in force, he will pay the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle policy if it had issued such a policy to the self-insurer. <u>More Like This Headnote</u>

<u>Insurance Law</u> > <u>Motor Vehicle Insurance</u> > <u>Coverage Generally</u> 🔖
**HN9** ⚡ See <u>Ohio Rev. Code Ann. § 4509.72</u>.

<u>Insurance Law</u> > <u>Motor Vehicle Insurance</u> > <u>Coverage Generally</u> 🔖
**HN10** ⚡ See <u>Ohio Rev. Code Ann. § 3937.18(C)</u>.

<u>Insurance Law</u> > <u>Motor Vehicle Insurance</u> > <u>Uninsured Motorists Coverage</u> ☐
**HN11** ☐ There can be no rejection of uninsured motorist (UIM) pursuant to <u>Ohio Rev. Code Ann. § 3937.18(C)</u> absent a written offer of uninsured motorist coverage from the insurance provider. Courts cannot know whether an insured has made an express, knowing rejection of UIM coverage unless there is a written offer and written rejection. It only follows that a valid rejection requires a meaningful offer, i.e., an offer that is an offer in substance and not just in name. <u>More Like This Headnote</u>

<u>Insurance Law</u> > <u>Motor Vehicle Insurance</u> > <u>Uninsured Motorists Coverage</u> 🔖
<u>Insurance Law</u> > <u>Motor Vehicle Insurance</u> > <u>Underinsured Motorists Coverage</u> 🔖
**HN12** ⚡ The presumption that a legally sufficient offer was made and the amendments to <u>Ohio Rev. Code Ann. § 3937.18(C)</u> do not eliminate the requirements in Linko that there be a meaningful offer, one that is

an offer in substance and not just name. In Linko, the Ohio Supreme Court applied basic contract law to determine what constituted a valid offer of uninsured/underinsured motorist (UM/UIM) coverage and concluded that an offer must contain a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits.  More Like This Headnote

Contracts Law > Formation > Offer

HN13 Without a meaningful offer, there can be no valid rejection.  More Like This Headnote

**COUNSEL:** Robert W. Kerpsack Co., L.P.A., and Robert W. Kerpsack, for appellants.

Davis & Young, Martin J. Murphy and J. Michael Creagan, for appellees Parker Hannifin Corporation, Zurich Insurance Company, Steadfast Insurance Company and Acadia International Insurance Limited.

**JUDGES:** PETREE, J. BOWMAN and BROWN, JJ., concur.

**OPINIONBY:** PETREE

**OPINION:** (REGULAR CALENDAR)

PETREE, J.

[*P1]  On September 3, 1998, a motor vehicle operated by Maria E. Dalton collided with a motor vehicle negligently driven by Carmel A. Wilson. Ms. Wilson was insured under an automobile insurance policy issued by State Farm Mutual Automobile Insurance Company with liability coverage of one hundred thousand dollars per person. At the time of the accident, Mrs. Dalton was employed by Parker Hannifin Corporation ("Parker"), but was neither driving a company vehicle nor acting within the scope of her employment.

[*P2]  On August 18, 2000, Mrs. Dalton and her husband, Giles Dalton ("plaintiffs"), filed a complaint seeking compensatory damages from Ms. Wilson for personal injuries sustained by Mrs. Dalton in the collision.  [**2]  n1 In addition, plaintiffs sought a declaratory judgment that they qualified as insureds and were entitled to uninsured/underinsured motorist ("UM/UIM") coverage under three separate policies issued to Parker: (1) a business automobile liability policy issued by Zurich Insurance Company ("Zurich"); (2) a commercial general liability policy issued by Acadia International Insurance Limited ("Acadia"); and (3) a commercial umbrella liability policy issued by Steadfast Insurance Company ("Steadfast"). The Parker Hannifin Health Plan and Provident Life & Accident Insurance Company ("Provident") were also named as defendants with respect to subrogation/reimbursement rights arising for benefits paid to plaintiffs under the terms of those plans/policies. Plaintiffs also sought a declaratory judgment that they were insureds and entitled to UM/UIM coverage under their automobile liability policy with State Farm Automobile Insurance Company ("State Farm Auto") and their homeowner's policy with State Farm Fire and Casualty Company ("State Farm Fire").

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Mr. Dalton's claim was for loss of consortium.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*\*3]**

**[\*P3]** The insurance carriers all denied that their respective policies provided UM/UIM coverage. In addition, Zurich, Acadia and Steadfast each filed counterclaims seeking a declaration that their policies did not provide UM/UIM coverage for plaintiffs' damages. Zurich filed an amended answer asserting the additional affirmative defense that Parker is self-insured and therefore its policy was not subject to the requirements of R.C. 3937.18.

**[\*P4]** Although plaintiffs did not name Parker as a defendant, Parker, with leave of court, intervened as a new-party defendant to assert its defense of self-insurer. Plaintiffs filed separate motions for summary judgment against Parker, Zurich, Acadia and Steadfast, n2 who in turn filed a joint motion for summary judgment against plaintiffs. On August 29, 2001, the trial court granted summary judgment in favor of defendants and denied plaintiffs' motions for summary judgment. Specifically, the trial court found that pursuant to "matching deductible" language contained in the Zurich and Acadia policies, Parker was self-insured "in a practical sense" and, accordingly, Parker's policies with Zurich and Acadia **[\*\*4]** were not subject to the mandatory requirements of R.C. 3937.18. Further, the trial court determined that even if Parker was not self-insured, Parker had validly rejected UM/UIM coverage. In addition, the trial court found that since there was no UM/UIM coverage imposed under the Zurich policy, the excess coverage provided by the Steadfast policy was never triggered.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Where appropriate, defendants Parker, Zurich, Acadia and Steadfast will be collectively referred to as "defendants."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[\*P5]** On August 31, 2001, the trial court filed an "Agreed Journal Entry," in which the parties stipulated, inter alia, that plaintiffs sustained total damages of two hundred fifty thousand dollars as a proximate result of the motor vehicle collision; that the potential UM/UIM coverage available to plaintiffs was reduced by Ms. Wilson's available bodily injury liability insurance coverage of one hundred thousand dollars; that plaintiffs' claims against Ms. Wilson and State Farm Auto were dismissed **[\*\*5]** with prejudice; and that plaintiffs' claims against State Farm Fire and Provident were dismissed without prejudice.

**[\*P6]** Plaintiffs have timely appealed the trial court's judgment, advancing three assignments of error for our review:

[1.] The trial court erred in granting summary judgment in favor of defendant-appellees, Zurich Insurance Company and Parker Hannifin Corporation, and denying plaintiff-appellants' motion for summary judgment on their claim for declaratory

relief on Zurich Business Auto Policy Number BAP 8416950-01.

[2.] The trial court erred in granting summary judgment in favor of defendant-appellees, Acadia International Insurance Limited and Parker Hannifin Corporation, and denying plaintiff-appellants' motion for summary judgment on their claim for declaratory relief on Acadia Commercial General Liability Policy Number AGL001.

[3.] The trial court erred in granting summary judgment in favor of defendant-appellees, Steadfast Insurance Company and Parker Hannifin Corporation, and denying plaintiff-appellants' motion for summary judgment on their claim for declaratory relief on Commercial Umbrella Liability Policy Number SUO 6987201-03.

[*P7]  [**6]  By their assignments of error, plaintiffs challenge the trial court's grant of summary judgment to defendants. Summary judgment is governed $^{HN1}$☐by Civ.R. 56(C), which provides, in relevant part, as follows:

*** Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. ***

[*P8]  Thus, $^{HN2}$☜summary judgment is appropriate only where the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains [**7] to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence mostly strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. _Tokles & Son, Inc. v. Midwestern Indemn. Co._ (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936, citing _Harless v. Willis Day Warehousing Co._ (1978), 54 Ohio St.2d 64, 65-66, 8 Ohio Op. 3d 73, 375 N.E.2d 46.

[*P9]  $^{HN3}$☜In reviewing a trial court's disposition of a summary judgment motion, an appellate court applies the same standard as that applied by the trial court. _Maust v. Bank One Columbus, N.A._ (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765. An appellate court reviews a summary judgment disposition independently and without deference to the trial court's judgment. _Brown v. Scioto Cty. Bd. of Commrs._ (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. Thus, in determining whether a trial court properly granted a summary judgment motion, an appellate court must review the standard for granting summary [**8] judgment set forth in Civ.R. 56, as well as the applicable law.

[*P10]  In their first assignment of error, plaintiffs take issue with the trial court's grant of summary judgment in favor of Parker and Zurich. Plaintiffs contend that the trial court's decision finding that Parker was self-insured "in a practical sense" and therefore its policy with Zurich was not subject to the requirements of R.C. 3937.18 was improper as a matter of law. Plaintiffs further contend that the trial court erred

as a matter of law in determining that Parker validly rejected UM/UIM coverage.

[*P11] The Zurich policy was originally issued on April 1, 1996, for a period of one year. The policy provides liability coverage in single limits of one million dollars per accident. Parker elected to reject UM/UIM coverage in those states, such as Ohio, where it could legally do so. Through Lynn Gross, Manager of Risk and Insurance Services, Parker executed a written rejection of UM/UIM coverage on April 8, 1996. The policy was renewed for successive one year periods on April 1, 1997 and April 1, 1998. Parker purportedly rejected UM/UIM coverage in both renewals through written [**9] rejections executed by Ms. Gross on July 1, 1997 and July 7, 1998, respectively.

[*P12] The April 1, 1997 and April 1, 1998 renewal policies included a "Business Auto Coverage Deductible Endorsement," which provided in pertinent part:

Coverage Deductible Amount/Basis

Liability Damages for Bodily $ 1,000,000 each "accident"

Injury, Property Damage and

Covered Pollution Cost or Expense

***

ALLOCATED LOSS ADJUSTMENT EXPENSE ("ALAE")

Section One:

Option 1. X As respects each "accident" or each "loss" (as applicable), all "ALAE" is reimbursed in addition to the Deductible Amount.

***

A. How This (These) Deductible(s) Apply(ies):

You agree to reimburse us for each "accident" or each "loss" up to the Deductible Amount shown in the Schedule above:

1. All sums payable for other than "ALAE"; plus

2. All "allocated loss adjustment expense" as respects any "accident" or "loss":

a. When you have elected Option 1 in the Schedule above, in addition to and not limited by the deductible amount[.]

[*P13] In addition, the record contains the affidavit of Ms. Gross, who attested that Parker had functioned as a self-insurer for the past twelve years, employed [**10] its own claims adjustment coordinator, made all decisions regarding claims handling, adjustment, settlement or trial, engaged counsel, and did not consider itself an insured of Zurich, other than "in form only" to facilitate its business. She further attested that Zurich had no right to handle or manage claims or select counsel, did not charge Parker a "premium" for its services, rather, it charged an "administrative

fee" based upon administrative costs and not upon risk and claims history, and maintained no risk. She further stated that Parker and Zurich were parties to a "Claims Services Contract," under which Parker determined whether a claim was complex enough to be sent to Zurich for claims investigation and handling or should remain with its in-house claims adjustment coordinator.

[*P14] Attached to Ms. Gross's affidavit is a copy of the "Claims Services Contract" referenced above, which is an agreement between Parker and third-party administrator Zurich Services Corporation ("ZSC"). Under that contract, ZSC agreed to provide claim services (including review, investigation, adjustment, settlement, defense, retention of counsel and payment of all allowed loss adjustment [**11] expense ["ALAE"]) for all qualified claims reported to ZSC during the stated term of the agreement, provided the claims fell within the coverage of one of the "policies of insurance" issued to Parker. One of the "policies of insurance" listed is the policy at issue herein.

[*P15] Further, under the contract, Parker granted "full and complete" authority to ZSC for all matters pertaining to the handling of claims within the subject of the contract. The contract further established a "Loss Fund Account," which enabled ZSC to fund for claim or loss payments and ALAE payments made on behalf of Parker. The Loss Fund Account was established by ZSC, in its name, with funds made available by Parker through Zurich for deposit in the Loss Fund Account. Under the contract, ZSC and Parker acknowledged that claim or loss payments, including ALAE payments, would be made exclusively with funds from the Loss Fund Account. The contract further stated that ZSC could suspend claims handling and payments in the event Parker failed to cooperate with Zurich regarding the Loss Fund Account or was the subject of any voluntary or involuntary insolvency proceeding.

[*P16] Also attached to Ms. [**12] Gross's affidavit is a copy of the "Deductible Agreement" between Parker and Zurich. That agreement provided that ZSC was to handle and pay claims presented in accordance with the provisions of the policy and that Parker would be billed for claim payments within the deductible amount, plus related expenses and assessments as stated in the specifications. The agreement further provided that Zurich accepted the risk transfer excess of the deductible amount up to the limits of liability under the policy and that Parker would pay Zurich for their assumption of that obligation and any expenses.

[*P17] The specifications include the business automobile liability policy at issue as one of the applicable policies. In addition, the specifications state:

**Deductible Amount(s)**

The following are the Deductible Amount(s) applying to all losses, claims, suits, actions or other proceedings with respect to all coverages provided under the Policy(ies):

A. The first $ 1,000,000 *** of the coverages provided under the Automobile Liability *** Policy(ies).

B. ALAE will be handled and paid as follows:

ALAE is in addition to the limits of liability and is reimbursed to [Zurich] by [Parker]. [**13]

***

J. The limits of liability under the Policy(ies) shall be reduced by the application of the Deductible Amount(s).

[*P18]  Because there have been numerous changes in recent years in both statutory and case law regarding UM/UIM coverage, we must initially determine the applicable policy period and the applicable version of R.C. 3937.18.

[*P19]  ᴴᴺ⁴□In *Wolfe v. Wolfe* (2000), 88 Ohio St.3d 246, 725 N.E.2d 261, the Ohio Supreme Court held that "pursuant to R.C. 3937.31(A), each motor vehicle liability insurance policy issued in this state must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39." Id. at paragraph one of the syllabus. The court further held that "the commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy." Id. at paragraph **[\*\*14]** two of the syllabus. Accordingly, ᴴᴺ⁵□in order to determine the effective date of the new contract, a court must determine the original issuance date of the policy and count successive two-year policy periods from that date. Id. at 250.

[*P20]  Here, the original issuance date of the Zurich policy was April 1, 1996. Counting successive two-year policy periods from that date, the last two-year guaranteed policy period before the September 3, 1998 accident began to run on April 1, 1998. "ᴴᴺ⁶□For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." *Ross v. Farmers Ins. Group of Cos.* (1998), 82 Ohio St.3d 281, 695 N.E.2d 732, syllabus. Pursuant to *Ross,* we must apply the version of R.C. 3937.18 in effect on April 1, 1998. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 The applicable version of R.C. 3937.18 was effective September 3, 1997. R.C. 3937.18 has since been amended by S.B. 97, effective October 31, 2001, to "eliminate any requirement of the mandatory offer of uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages"; to "eliminate the possibility of uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages being implied as a matter of law in any insurance policy;" to "eliminate any requirement of a written offer, selection, or rejection form for uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages from any transaction in an insurance policy."

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*\*15]**

[*P21]  That version of R.C. 3937.18 provided, in pertinent part, that "no automobile liability or motor vehicle liability policy of insurance *** shall be delivered or issued for delivery in this state *** unless both [UM and UIM] coverages are offered to persons insured under the policy ***." R.C. 3937.18(A)(1). Further, R.C.

3937.18(A)(1) and (2) provided, in part, that the UM/UIM coverages must be "in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage ***." Failure to offer UM/UIM coverage resulted in the automatic extension of that coverage by operation of law. See _Abate v. Pioneer Mutual Cas. Co._ (1970), 22 Ohio St.2d 161, 51 Ohio Op. 2d 229, 258 N.E.2d 429, paragraph two of the syllabus.

[*P22] As noted previously, plaintiffs first contend that the trial court erred in determining that Parker is self-insured and that its policy with Zurich is not subject to the requirements of R.C. 3937.18. The starting point for our analysis of this issue is _Snyder v. Roadway Express, Inc._ (1982), 7 Ohio App.3d 218, 7 Ohio B. 279, 455 N.E.2d 11. [**16] In that case, Snyder, an employee of Roadway Express ("Roadway"), sustained personal injuries in a collision with an uninsured motorist. The parties conceded that Roadway held a certificate of self-insurance with regard to motor vehicle liability insurance. Snyder requested coverage from Roadway as to UM coverage and was informed that it had none. Thereafter, Snyder filed an action seeking a declaratory judgment requiring Roadway, as a self-insurer, to provide UM coverage. The Summit County Court of Appeals held that the UM/UIM requirements of R.C. 3937.18 were not intended to apply to self-insurers. Id. In so holding, the court determined that the statute applied to insurance carriers authorized to write motor vehicle liability insurance policies and did not mention self-insurers. The court explained that if the statute was applied to self-insurers, it would result in the "anomalous situation where one has the right to reject an offer of insurance to ones' self." Id. The court stated that it "did not believe the legislature intended such an absurd result." Id.

[*P23] Four years later, the Ohio Supreme Court decided _Grange Mut. Cas. Co. v. Refiners Transport and Terminal Corp._ (1986), 21 Ohio St.3d 47, 21 Ohio B. 331, 487 N.E.2d 310. [**17] In _Grange_, a truck driver employed by Refiners was fatally injured by an uninsured motorist. The accident occurred while the decedent was driving a truck, owned by Refiners, in the course of his employment. Refiners met state financial responsibility requirements for its truck fleet in part by purchasing a financial responsibility bond and in part by purchasing excess insurance coverage, none of which contained uninsured motorists coverage. The decedent's personal motor vehicle policy, issued by Grange, contained uninsured motorist coverage. After Grange settled with the decedent's estate, it filed a declaratory judgment action against Refiners alleging that Refiners was required to provide uninsured motorist coverage on its truck fleet. Grange asserted that Refiners, as a self-insurer, was obligated under R.C. 3937.18 to provide uninsured motorist coverage for the protection of its drivers. In opposition, Refiners contended that it was not a self-insurer, and in any event, Ohio law did not require that uninsured motorist coverage be provided either under a financial responsibility bond or by a self-insurer.

[*P24] The court framed the issue before [**18] it as "whether an employer, who meets Ohio's financial responsibility laws other than by purchasing a contract of liability insurance, must comply with the requirements concerning uninsured motorist coverage contained in R.C. 3937.18 relative to employees injured in the course of employment while driving or occupying a vehicle owned by the employer." Id. at 48. The court adopted the result reached in _Snyder_, supra, i.e., that R.C. 3937.18 did not apply to self-insurers. The _Grange_ court found that although Refiners' effort to meet its financial responsibility requirements by purchasing a financial surety bond and two excess insurance policies did not make it a self-insurer "in the legal sense contemplated by R.C. 4509.45(D) and 4509.72," such effort did make it a self-

insurer "in the practical sense in that Refiners was ultimately responsible under the term of its bond either to a claimant or the bonding company in the event the bond company paid any judgment claim." 21 Ohio St. 3d at 49. The court further noted that "since we find that [Refiners'] status [**19] was actually that of a bond principal and not a self-insurer, a conclusion that the requirements of R.C. 3937.18 are not applicable is even more compelling." Id. The court ultimately found, however, that "whether [Refiners] is considered a bond principal, self-insurer, or both," Refiners was not subject to the requirements of R.C. 3937.18. 21 Ohio St. 3d at 50. Despite its narrow framing of the issue before it, the court held broadly at the syllabus that the "uninsured motorists provisions of R.C. 3937.18 do not apply to either self-insurers or financial responsibility bond principals."

[*P25] In McCollum v. Continental Ins. Co. (1993), Lucas App. No. L-92-141, 1993 Ohio App. LEXIS 2022, McCollum was fatally injured in a collision with an uninsured motorist while operating a truck owned by his employer, an RLC Corporation ("RLC") Ohio subsidiary. The executor of McCollum's estate instituted a declaratory judgment action to determine the rights and obligations of the parties under a comprehensive liability policy issued to RLC by Continental Insurance Company ("Continental"). Under the terms of the policy, Continental agreed to indemnify [**20] RLC for the "net ultimate loss" (in excess of a self-retained limit of two hundred fifty thousand dollars) for which RLC became legally obligated as the result of a claim for, inter alia, bodily injury. The total limit of liability stated in the policy was seven hundred fifty thousand dollars in excess of RLC's two hundred fifty thousand dollar self-retained limit. The policy contained no endorsements relative to uninsured motorist coverage.

[*P26] It was undisputed that RLC never filed a certificate of self-insurance due to a "fronting agreement" between RLC and Continental. The court described the "fronting agreement" as follows:

[A] "fronting agreement" *** is an insurance term indicating that an entity is renting an insurance company's licensing and filing capabilities in a particular state or states. Pursuant to the RLC/Continental fronting agreement, RLC paid yearly premiums to Continental which, in turn, filed the proof of insurance required by Ohio's governmental agencies, e.g., the Public Utilities Commission of Ohio. The insurer named in these filings was Continental; they provided liability coverage on a first dollar basis. That is, Continental filed proof that [**21] RLC was insured by Continental up to its $ 250,000 self-retained limit. In the event that Continental was required to satisfy a claim as a result of the filings, RLC, pursuant to an indemnity agreement, automatically reimbursed Continental in an amount up to the self-retained limit of $ 250,000. [Id.]

[*P27] Continental contended that pursuant to this "fronting agreement," RLC was a self-insurer and, therefore, R.C. 3937.18 was inapplicable to the Continental policy. The McCullom court, citing Grange, supra, found as follows:

Although the Grange court ultimately decided that Refiners was a bond principal rather than a self-insurer, the precepts provided in that case serve as guidelines in this cause. Here, RLC entered into a fronting agreement with Continental under which the latter made required filings representing that it was the liability insurer for RLC in Ohio for every dollar of the self-retained limit of $ 250,000. If a claim arose, Continental was required to pay on behalf of RLC as a result of the agreement and was automatically reimbursed by RLC. Therefore, there was no shift of risk of loss from RLC to Continental [**22] and, as in Grange, RLC was ultimately responsible

for any claim. Accordingly, one could conclude that RLC was self-insured "in a practical sense." *** [Id.]

[*P28] The *McCollum* court ultimately concluded, however, that despite the fact that RLC was, for all practical purposes, a self-insurer, R.C. 3937.18(A) was applicable to excess fleet liability policies carried by a self-insurer. As a result, the court concluded that RLC's status as a self-insurer did not affect the applicability of R.C. 3937.18 to the policy.

[*P29] In July 2000, the United States District Court for the Southern District of Ohio decided *Lafferty v. Reliance Ins. Co.* (S.D.Ohio 2000), 109 F. Supp. 2d 837. In that case, Lafferty, an employee of Consolidated Rail Corporation ("ConRail") was driving a truck owned by ConRail when he was struck by a truck owned by Mutter's Lawn Service ("Mutter's") and operated by one of its employees. Lafferty asserted claims against Mutter's and the employee, and their insurers paid their combined policy limits of $ 1.5 million. Thereafter, Lafferty filed a claim action against ConRail's insurer, [**23] Reliance Insurance Company ("Reliance"), asserting that the Reliance policy should have included $ 5 million in UIM coverage which should be available to Lafferty to cover the remainder of his claims. ConRail argued that the policy was not true insurance, but as a "fronting policy," was self-insurance not subject to R.C. 3937.18.

[*P30] The court described the insurance arrangement between ConRail and Reliance in this way:

*** ConRail requested a quote [from Reliance] on a "fronting" policy with liability limits of five million dollars and a matching deductible of five million dollars. In effect, ConRail was asking Reliance to make all filings necessary to satisfy the motor vehicle financial responsibility laws of all fifty states, and to provide claims administration services while ConRail retained the risk of loss due to liability. Realizing that most states have statutory requirements relating to *** ("UM/UIM") coverage, ConRail requested that in the proposed insurance plan such coverage should be eliminated in states where it is permissible to reject it, and that it should be written with the minimum limits permitted by statute in states where [**24] rejection is not permitted. [ Id. at 838.]

[*P31] The court further stated:

The ConRail policy had a matching liability limit and deductible amount of five million dollars. ConRail was obligated to promptly reimburse Reliance for the entire amount of any payments made under the policy, and ConRail's obligation to do so was secured by a letter of credit. In effect, ConRail was a self-insurer and Reliance was providing a service which included the defense and adjustment of claims and the use of its licenses as an insurer so that ConRail could satisfy the automobile insurance requirements of the various states in which it operated motor vehicles. [ Id. at 841.]

[*P32] The *Lafferty* court discussed and quoted from *Grange* and noted that "two Ohio courts have applied the rationale of [*Grange*] to matching deductible policies similar or identical to the one involved in this case." Id. at 842 (citing *McCollum, supra,* and *DeWalt v. State Farm Ins. Co.* [1997], Lake C.P. No. 96CV001173.) The *DeWalt* case was attached to *Lafferty* as an appendix since it involved the same parties and the same insurance policy. [**25]

**[*P33]**  In *DeWalt,* the court found that because ConRail had agreed to assume the risk of loss up to the policy limits, it was self-insured in a practical sense although not statutorily self-insured in accordance with R.C. Chapter 4509. In so finding, the court noted that "the policy did not shift the risk of loss to the insurer and indeed, the policy required Conrail to even assume certain administrative costs of Reliance in processing the claims." Id. The court further noted that although there was no case law on the issue of whether entities "effectively self-insured" were required to comply with R.C. 3937.18, there was case law holding that entities who had filed certificates of self-insurance (*Snyder*) and entities who had posted financial responsibility bonds (*Grange*) were not required to comply with R.C. 3937.18. The court extended the logic in those two cases "one step further" to conclude that "a self-insurer in a practical sense is not required to comply with R.C. 3937.18." Id.

**[*P34]**  The *Lafferty* court adopted the reasoning in *DeWalt* and concluded that "under the matching **[**26]** deductible policy issued by Reliance, ConRail was a self-insurer in the practical sense and *** the Reliance policy was not subject to the provisions of O.R.C. 3937.18." Id.

**[*P35]**  ᴴᴺ²☐In determining whether an entity is self-insured, courts look at who bears the risk of loss. "Self-insurance is not insurance; it is the antithesis of insurance." *Physicians Ins. Co. of Ohio v. Grandview Hosp. & Med. Ctr.* (1988), 44 Ohio App.3d 157, 158, 542 N.E.2d 706. This notion was reiterated in *Jennings v. Dayton* (1996), 114 Ohio App.3d 144, 682 N.E.2d 1070, wherein the Montgomery County Court of Appeals stated:

While insurance shifts the risk of loss from the insured to the insurer, self-insurance involves no risk-shifting. Rather, in the self-insurance context, the risk is borne by the one whom the law imposes it. The defining characteristic of insurance, the assumption of specific risks from customers in consideration for payment, is entirely absent where an entity self-insures. *** [ Id. at 148.]

The *Jennings* court held, therefore, that "self-insurance" is the legal equivalent of no insurance for purposes **[**27]** of the distribution of UM/UIM benefits in accordance with R.C. 3937.18(A).

**[*P36]**  ᴴᴺ⁸☐ R.C. 4509.45(E) and 4509.72 set forth the specific requirements for being a self-insurer in the motor vehicle context. R.C. 4509.45(E) provides that proof of financial responsibility may be given by filing:

A certificate of self-insurance, as provided in section 4509.72 of the Revised Code, supplemented by an agreement by the self-insurer that, with respect to accidents occurring while the certificate is in force, he will pay the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle policy if it had issued such a policy to the self-insurer.

**[*P37]**  ᴴᴺ⁹☂ R.C. 4509.72 states, in pertinent part:

(A) Any person in whose name more than twenty-five motor vehicles are registered in this state may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the registrar of motor vehicles as provided in division (B) of this section.

(B) The registrar shall issue a certificate of self-insurance **[**28]**  upon the application of any such person who is of sufficient financial ability to pay judgments

against him.

A certificate may be issued authorizing a person to act as a self-insurer for either property damage or bodily injury liability, or both.

[*P38]  Parker and Zurich concede that Parker does not hold a certificate of self-insurance pursuant to R.C. 4509.72 and 4509.45(E), nor is it a surety bond principal pursuant to R.C 4509.45(C). However, in the trial court, Parker and Zurich relied upon *Lafferty, McCollum* and *DeWalt* in arguing that the matching deductible language contained in the Zurich policy makes Parker, in a practical sense, a self-insurer; thus, the policy is not subject to the requirements of former R.C. 3937.18(A). The trial court agreed. We do not agree with the position taken by Parker, Zurich and the trial court, however, as we are neither compelled, nor inclined, to follow *Lafferty, McCullom* or *DeWalt.* None of the three cases are controlling authority on this court. See *Kelly v. Ford Motor Co.* (1957), 104 Ohio App. 185, 194, 4 Ohio Op. 2d 352, 76 Ohio Law Abs. 170, 139 N.E.2d 99 [**29] (federal decisions not binding upon state appellate courts); *Evans v. Wills* (2001), Franklin App. No. 01 AP-422, 2001 Ohio 8750 (unreported cases from other appellate districts not controlling authority); *Rumberg v. Rumberg* (1998), Mahoning App. No. 96 CA156, 1998 Ohio App. LEXIS 6195 (appellate court not bound by common pleas court decisions). Further, we do not find any of the three cases to be persuasive authority, as they all, in our view, extend *Grange* well beyond its holding.

[*P39]  Initially, we note that *Grange* is factually distinguishable from *Lafferty, McCullom, DeWalt* and the instant case. In *Grange,* Refiners purchased a financial responsibility bond and two excess insurance policies. The court adopted the conclusion reached in *Snyder*, which held that former R.C. 3937.18 did not apply to self-insurers. The *Snyder* case involved an employer who was qualified as a self-insurer pursuant to its filing of a certificate of self-insurance. The *Grange* court ultimately determined that Refiners' status as a bond principal made it a self-insurer "in a practical sense," even though Refiners had not obtained a certificate of self-insurance. The court recognized [**30] that proof of financial responsibility may be satisfied by filing a surety bond without having to obtain a certificate of self-insurance.

[*P40]  In contrast, *Lafferty, McCullom, DeWalt* and the instant case do not involve either bond principals or certificated self-insurers; rather, they involve entities who entered into "fronting/matching deductible agreements" with insurance companies in an apparent effort to avoid meeting the statutory requirements to qualify as a self-insurer. The issue of whether "fronting/matching deductible agreements" constitute self-insurance was not addressed, or even contemplated, in *Grange*. Thus, we find it improper to extend *Grange* to include as self-insurers entities who enter into "fronting/matching deductible agreements."

[*P41]  Further, we do not believe that the "fronting/matching deductible agreement" between Parker and Zurich constitutes a self-insured scheme. We reiterate that Parker admits that it did not file a certificate of self-insurance in accordance with R.C. 4509.45(E) and 4509.72. Despite its admitted failure to comply with the statutory requirements for [**31] invoking self-insured status, Parker seeks to declare itself a self-insurer for purposes of avoiding the requirements of the UM/UIM statute. It is our view that Parker cannot have it both ways.

[*P42]  Upon review of the policy language, including that contained in the "Claims

Services Contract" and the "Deductible Agreement," we conclude that the agreement between Zurich and Parker constitutes an insurance policy. Both the "Claims Services Contract" and the "Deductible Agreement" refer to the policy as a "policy of insurance." Moreover, when a liability claim arises against Parker, Zurich is required to pay the entire loss and is then reimbursed by Parker. However, the ultimate risk for the loss remains with Zurich, if Parker either refuses or is financially unable to reimburse Zurich for the loss. We do not believe that this type of reimbursement arrangement is enough to make Parker "self-insured in the practical sense." Because Parker neither obtained a certificate of self-insurance certifying that it is of sufficient financial ability to pay judgments against it (as contemplated in *Snyder*), nor posted a financial responsibility bond (as contemplated in *Grange*), **[\*\*32]** Parker may not be considered a self-insurer. As stated by the Montgomery County Court of Common Pleas in *Roberts v. State Farm Mutual Auto. Ins. Co.* (2001), Montgomery C.P. No. 00-CV-0886:

It may be well and good and entirely lawful for a "fronting agreement" \*\*\* to spare [an entity] the expense and potential administrative quagmires of formal registration in every state, territory and country where it does business and for these "devices" to provide [an entity] the use of [an insurer's] filings and claims service, but they do not paralyze or mute the walking and quacking duck of insurance coverage.

Although we are clearly not bound by this decision, we find the court's reasoning persuasive and applicable to the case before us.

 **[\*P43]** Accordingly, we conclude the trial court erred as a matter of law in finding that Parker was self-insured and that its policy with Zurich was not subject to the requirements of <u>R.C. 3937.18</u>. Since Parker attempted to satisfy <u>R.C. 4509.45</u> via its automobile liability policy with Zurich, Zurich was required to offer UM/UIM coverage.

 **[\*P44]** Our analysis does not end here, however, **[\*\*33]** because the trial court found that even if Zurich was not self-insured and was thus required to offer UM/UIM coverage, Parker validly rejected such coverage. We disagree.

 **[\*P45]** The version *HN10*☐of <u>R.C. 3937.18(C)</u> applicable to the instant case provided in part:

A named insured or applicant may reject or accept both coverages as offered under division (A) of this section, or may alternatively select both such coverages in accordance with a schedule of limits approved by the superintendent. \*\*\* A named insured's or applicant's rejection of both coverages as offered under division (A) of this section \*\*\* shall be in writing and shall be signed by the named insured or applicant. A named insured's or applicant's written, signed rejection of both coverages as offered under division (A) of this section \*\*\* shall be effective on the day signed, shall create a presumption of an offer of coverages consistent with division (A) of this section, and shall be binding on all other named insureds, or applicants.

 **[\*P46]** As previously noted, the record in the instant case includes a signed copy of an "Uninsured/Underinsured Motorists Coverage Selection/Rejection/Limits **[\*\*34]** Summary Form," which summarized Parker's selection/rejection of UM/UIM in all fifty states. This "Summary Form" expressly indicated that an "Uninsured/Underinsured Motorists Coverage Selection/Rejection and Limits Options" form accompanied the policy. The "Summary Form" further stated that by signing it, the insured indicated

that it had read and understood the "Uninsured/Underinsured Motorists Coverage Selection/Rejection and Limit Option" form. It further stated in capital letters that "This summary is not a substitute for reviewing each individual state's selection/rejection form for UM and UIM coverage. You are required to do so."

[*P47]  The record also includes a signed copy of the "Rejection of Uninsured/Underinsured Motorists Coverage, Selection of Lower Limit of Liability & Rejection of Uninsured Motorists Property Damage Coverage" form for Ohio ("Ohio form"). That form states, in pertinent part, as follows:

The Ohio Revised Code (Section 3937.18), amended, permits you the insured named in the policy, to reject the Uninsured Motorists/Underinsured Motorists Coverage or to select a limit for such coverage lower than the limit for Bodily Injury Coverage in the policy.  [**35]  Uninsured Motorists Coverage provides insurance for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. Underinsured Motorists Coverage provides insurance for protection against loss for bodily injury, sickness or disease, including death, where the limit of coverage available for payment to the insured is less than the limit for the Uninsured Motorists Coverage under all bodily injury liability bonds and insurance policies covering persons liable to the insured under your policy at the time of the accident.

***

In accordance with the Ohio Revised Code (Section 3937.18), amended, and Ohio Code (Section 3937.181), the undersigned insured (and each of them) -

***

X agrees that the Uninsured Motorists/Underinsured Motorists Coverage afforded in the policy is hereby deleted.

[*P48]  In the trial court, Zurich and Parker contended that the written rejection of UM/UIM coverage created a presumption under R.C. 3937.18(C) that UM/UIM coverage was offered consistent with the [**36]  requirements of R.C. 3937.18(A). Plaintiffs admitted that the presumption existed; however, they argued that the applicable version of R.C. 3937.18(C) did not eliminate the requirement that the offer comport with the requirements set forth in *Linko v. Indemn. Ins. Co. of N. Am.* (2000), 90 Ohio St.3d 445, 739 N.E.2d 338. Plaintiffs further contended that Parker's rejection was ineffective under *Linko* because Zurich's offer did not expressly state the premium for UM/UIM coverage and UM/UIM coverage limits.

[*P49]  The trial court determined that *Linko* was inapplicable to the instant case because *Linko* was concerned with a prior version of R.C. 3937.18 that did not include the language about the presumption that the offer was made. The trial court found that plaintiffs had failed to rebut the presumption that a legally sufficient offer was made and thus held that there was a sufficient offer and rejection of UM/UIM coverage equal to the liability coverage of the Zurich policy.

[*P50]  In *Gyori v. Johnston Coca-Cola Bottling Group, Inc.* (1996), 76 Ohio St.3d 565, 669 N.E.2d 824, [**37]  the Ohio Supreme Court held at paragraph one of the syllabus that "*HN11* there can be no rejection pursuant to R.C. 3937.18(C) absent a

written offer of uninsured motorist coverage from the insurance provider." In _Linko, supra,_ the Ohio Supreme Court discussed _Gyori_, stating:

*** _Gyori_ stands for the proposition that we cannot know whether an insured has made an express, knowing rejection of UIM coverage unless there is a written offer and written rejection. It only follows that a valid rejection requires a meaningful offer, i.e., an offer that is an offer in substance and not just in name." [ _Id. at 449._]

[*P51]  In the instant case, Parker and Zurich do not contend that Zurich's offer contained premium information and/or coverage limits. Instead, Parker and Zurich maintain that _Linko's_ requirement that the offer include premium information and/or coverage limits is no longer viable in light of the amended version of R.C. 3937.18(C). They contend that when the General Assembly enacted the amendments to R.C. 3937.18(C), it rejected the _Gyori_ requirement that [**38]  an offer must be in writing and, accordingly, since that requirement was a central premise of the court's holding in _Linko_, the requirements set forth in _Linko_ as to what constitutes a meaningful offer are no longer good law.

[*P52]  The precise issue raised herein was recently considered by this court in _Edstrom v. Universal Underwriters Ins. Co.,_ Franklin App. No. 01 AP-1009, 2002 Ohio 3334, at P18, wherein we held that "ᴴᴺ¹²⊼the presumption and the amendments do not eliminate the requirements in _Linko_ that there be a meaningful offer, one that is an offer in substance and not just in name." This court noted that in _Linko,_ the Ohio Supreme Court applied basic contract law to determine what constituted a valid offer of UM/UIM coverage and concluded that an offer must contain "a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits." _Linko, 90 Ohio St. 3d at 449._ This court further noted that the same result had been reached by the Fifth District Court of Appeals in _Pillo v. Stricklin_ (2001), Stark App. No. 2001 CA00204, 2001 Ohio 7049, which held that the 1997 amendments to R.C. 3937.18 did not eliminate [**39]  the requirements set forth in _Linko_ as to what an offer must contain and that there were no provisions in H.B. 261 which clarified or modified what the contents of a written offer must be. Accord, _Still v. Indiana Ins. Co._ (2002), Stark App. No. 2001 CA 00300, 2002 Ohio 1004; _Roper v. State Auto. Mut. Ins. Co.,_ Hamilton App. No. C-010117, 2002 Ohio 3283 at P29; _Raymond v. Sentry Ins._ (2002), Lucas App. No. L-01-1357, 2002 Ohio 1228; _Shindollar v. Erie Ins. Co.,_ Auglaize App. No. 2-01-35, 2002 Ohio 2971 at P9; _Minor v. Nichols,_ Jackson App. No. 01 CA14, 2002 Ohio 3310 at P15. But, see _Martinez v. Travelers Ins. Co._ (2002), Summit App. No. 20796, 2002 Ohio 1979 (not applying _Gyori_ or _Linko_ to an action arising out of the 1997 amendments to R.C. 3937.18); _Purvis v. Cincinnati Ins. Co._ (2002), Greene App. No. 2001 CA104, 2002 Ohio 1803 (rejecting _Linko_ when concluding that a valid rejection may be rebutted).

[*P53]  In the instant case, the "Summary Form" clearly and unambiguously indicated that the Ohio form is the offer and the "Summary Form" is the rejection form. _Minor,_ supra. Parker and Zurich do not dispute, and a review of the record establishes, that the offer did [**40]  not contain UM/UIM premium information and/or coverage limits. Thus, the purported rejection of UM/UIM coverage was invalid because the offer was legally inadequate. ᴴᴺ¹³⊼Without a meaningful offer, there can be no valid rejection. See _Edstrom, supra._ Accordingly, UIM coverage arises by operation of law in an amount equal to the policy liability coverage. _Abate, supra._ Based on the foregoing, plaintiffs' first assignment of error is well-taken.

**[\*P54]** By the second assignment of error, plaintiffs contend that the trial court erred in granting summary judgment to Parker and Acadia on plaintiffs' claim for declaratory relief under the commercial general liability policy issued by Acadia. Specifically, plaintiffs contend that the Acadia policy is a motor vehicle liability policy subject to the requirements of R.C. 3937.18 and, as such, Acadia was required to offer UM/UIM coverage. Plaintiffs contend that since it is undisputed that no such coverage was offered by Acadia (and therefore, there was no valid rejection of such coverage by Parker), UM/UIM coverage in an amount equal to the liability coverage set forth in the declarations page **[\*\*41]** of the policy was provided by operation of law.

**[\*P55]** The Acadia policy was originally issued on April 1, 1995, for a period of one year. The policy provided bodily injury liability coverage of two million dollars per accident. The declarations page of the policy did not state that the policy provided UM/UIM coverage, nor did Acadia expressly offer it. The policy was thereafter renewed, with the applicable policy period commencing on April 1, 1998. The original policy and the applicable renewal contained a "Self-Insured Deductible" endorsement, which stated: "notwithstanding anything contained herein to the contrary the insurer will not pay the first $ 2,000,000 arising out of each occurrence." The trial court found that the "Self-Insured Deductible" endorsement constituted a "matching deductible/deductible equal limits" devise similar to that in Parker's commercial automobile liability policy with Zurich; thus, because Parker was self-insured, Acadia was not required to offer UM/UIM coverage. Having so found, the trial court declined to determine whether the Acadia policy was a motor vehicle liability policy of insurance subject to the requirements of R.C. 3937.18 **[\*\*42]** , or whether Ms. Dalton fell within the definition of a "named insured" under the policy.

**[\*P56]** However, for the reasons set forth in our discussion regarding the Zurich policy, we find that Parker is not, as a matter of law, self-insured. Accordingly, we find that the trial court erred in finding that Parker was self-insured and that the Acadia policy was thus not subject to the requirements of former R.C. 3937.18. Accordingly, the matter must be remanded to the trial court for a determination as to whether the Acadia policy constitutes a motor vehicle policy of insurance subject to the requirements of former R.C. 3937.18 and, if so, whether Ms. Dalton qualifies as a "named insured" under the policy. Accordingly, the second assignment of error is well-taken.

**[\*P57]** By the third assignment of error, plaintiffs contend that the trial court erred in granting summary judgment to Parker and Steadfast on plaintiffs' claim for declaratory relief under the commercial umbrella liability policy issued by Steadfast. Specifically, plaintiffs contend that the Steadfast policy is subject to the requirements of R.C. 3937.18 **[\*\*43]** , and, since it is undisputed that no UM/UIM coverage was offered by Steadfast (and therefore, there was no valid rejection of such coverage by Parker), UM/UIM coverage in an amount equal to the liability coverage set forth in the declarations page of the policy was provided by operation of law.

**[\*P58]** The Steadfast policy was issued for a three-year period commencing on April 1, 1997, and provided liability limits of twenty-five million dollars per occurrence. The declarations page of the policy did not state that the policy provided UM/UIM coverage, nor did Steadfast expressly offer it. The policy provided that Steadfast "will pay on behalf of the insured that portion of the ultimate net loss in excess of the retained limits \*\*\* which the insured shall become legally obligated to pay as damages because of bodily injury \*\*\* caused by an occurrence to which this

insurance applies." The policy defined "retained limit" in pertinent part, as "the total of the applicable limits of the underlying insurance listed in the Schedule of Underlying Insurance, whether or not collectible, and the applicable limits of any other underlying insurance providing coverage to the insured[.]" Further, **[\*\*44]** the policy contained a "Schedule of Underlying Insurance" endorsement, which listed the Zurich automobile liability policy.

[\*P59]  The trial court found that the Steadfast policy was invoked only after Parker sustained liability covered by the Zurich automobile policy, Zurich paid the full limits of its policy, and Parker had remaining liability. According to the trial court, because the Zurich policy did not provide UM/UIM coverage, there was no excess coverage for Steadfast to pay. Having determined, however, that the trial court erred as a matter of law in finding that the Zurich policy did not provide UM/UIM coverage, the matter must be remanded to the trial court for a determination as to whether the Steadfast policy provides UM/UIM coverage by operation of law. Accordingly, the third assignment of error is well-taken.

**[\*P60]**  For the foregoing reasons, all three of plaintiffs' assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed and cause remanded.*

BOWMAN and **[\*\*45]** BROWN, JJ., concur

# EXHIBIT B

*2003 Ohio 1558, *; 2003 Ohio App. LEXIS 1495, ***

TODD C. GRUBB, Plaintiff-Appellant v. MICHIGAN MUTUAL INSURANCE
COMPANY, ET AL., Defendants-Appellees

C.A. Case No. 19575

COURT OF APPEALS OF OHIO, SECOND APPELLATE DISTRICT, MONTGOMERY
COUNTY

2003 Ohio 1558; 2003 Ohio App. LEXIS 1495

March 28, 2003, Rendered

**SUBSEQUENT HISTORY:** Discretionary appeal allowed by <u>Grubb v. Mich. Mut.</u>
<u>Ins. Co., 99 Ohio St. 3d 1540, 2003 Ohio 4671, 795 N.E.2d 680, 2003 Ohio</u>
<u>LEXIS 2214 (2003)</u>
Reversed by <u>In re Uninsured & Underinsured Motorist Coverage Cases, 100 Ohio</u>
<u>St. 3d 302, 2003 Ohio 5888, 798 N.E.2d 1077, 2003 Ohio LEXIS 2818 (2003)</u>
Motion granted by <u>Grubb v. Mich. Mut. Ins. Co., 2003 Ohio LEXIS 3121 (Ohio,</u>
<u>Nov. 24, 2003)</u>

**PRIOR HISTORY:**  [**1]  (Civil Appeal from Common Pleas Court.) T.C. Case
No. 01-CV-4771.

**DISPOSITION:** Reversed and remanded.

## CASE SUMMARY

**PROCEDURAL POSTURE:** The Montgomery County Court of Common Pleas
(Ohio) granted summary judgment in favor of appellees, the first and
second insurers, and against appellant, underinsured motorist (UIM)
claimant on his complaint requesting coverage. The claimant appealed.

**OVERVIEW:** The claimant challenged the judgment entered, contending
that the trial court erred in rendering summary judgment and in failing to
stay the action below. The appeals court held that there was a genuine issue
of material fact whether either of the insurers was prejudiced by the
claimant's failure to provide timely notice of his claims, or by his failure to
have preserved each insurer's rights of subrogation. The appeals court also
rejected arguments from the second insurer that: (1) the claimant was not
an insured under its policy; (2) its policy was not covered by the
requirements of Ohio Rev. Code Ann. § 3937.18 because its insured was
really self-insured; and (3) the claimant was not entitled to coverage
because his damages did not exceed that insured's deductible. The court
also held that on remand, the trial court was to address the issue of a list of
individuals, namely employees and their spouses, that the insured

maintained of those entitled to coverage, as the court did not find that the insured met its burdens under Ohio R. Civ. P. 56 without the list. The claimant's remaining arguments were not addressed.

**OUTCOME:** The judgment was reversed and the case was remanded.

**CORE TERMS:** insured, summary judgment, coverage, insurer, notice, fronting, self-insured, subrogation, deductible, prejudiced, entitled to coverage, self-insurer, settlement, uninsured, listing, underinsured motorist coverage, named insured, underinsured, prejudicial, entity, insurance policy, breached, genuine issue of material fact, policy of insurance, unreasonable delay, liability coverage, primary liability, timely notice, giving notice, matter of law

### LexisNexis (TM) HEADNOTES - Core Concepts – ◆ Hide Concepts

Civil Procedure > Appeals > Standards of Review > De Novo Review 🖳
***HN1***⤓ An appellate court reviews the appropriateness of summary judgment de novo.  More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard 🖳
Civil Procedure > Appeals > Standards of Review > Standards Generally 🖳
***HN2***⤓ Pursuant to Ohio R. Civ. P. 56, summary judgment is appropriate when: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Additionally, an appellate court can decide an issue on grounds different from those determined by the trial court, so long as the evidentiary basis upon which the appellate court relies was addressed before the trial court and is a matter of record.  More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Coverage Generally 🖳
***HN3***⤓ When the only named insured is a corporate entity, the use of the word "you" in the description of who is an insured is essentially meaningless because a corporation itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. The term "you" could be construed to include the employees of the corporation, thereby extending coverage to the employees of the named corporation.  More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Uninsured Motorists Coverage 🖳
Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage 🖳
***HN4***⤓ The relevant version of Ohio Rev. Code Ann. § 3937.18 provides that uninsured/underinsured motorists (UM/UIM) coverage be offered with every policy of insurance delivered, or issued for delivery in the State of Ohio, in an amount equivalent to the amount of liability coverage. In the absence of a valid offer and rejection, UM/UIM coverage in an amount equal to the liability coverage limit is imputed as a matter of law. However, in Ohio, Ohio Rev. Code Ann. § 3937.18 is not applicable to self-insurers who comply with Ohio Rev. Code Ann. §§

4509.45(E) and 4509.72. The Supreme Court extended the self-insurer exception to <u>Ohio Rev. Code Ann. § 3937.18</u> to include companies that purchase financial responsibility bonds.  More Like This Headnote

Insurance Law > Business Insurance > Self-Insurance
*HN5* A "fronting agreement" is an insurance term indicating that an entity is renting an insurance company's licensing and filing capabilities in a particular state or states.  More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Uninsured Motorists Coverage
Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage
Insurance Law > Business Insurance > Self-Insurance
*HN6* Fronting agreements do not constitute self-insured schemes. Further, a company cannot be allowed to fail to comply with the statutory requirements for invoking self-insured status, and at the same time seek to declare itself a self-insurer for purposes of avoiding the requirements of the uninsured/underinsured motorists statute. It may be well and good and entirely lawful for a fronting agreement to spare an entity the expense and potential administrative quagmires of formal registration in every state, territory and country where it does business and for these devices to provide an entity the use of an insurer's filings and claims service, but they do not paralyze or mute the walking and quacking duck of insurance coverage.  More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage
Insurance Law > Motor Vehicle Insurance > Notice Obligations
*HN7* When an insurer's denial of underinsured motorist (UIM) coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide UIM coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary. The breach of consent-to-settle or other subrogation-related provisions in UIM policies is presumed to be prejudicial to the insurer absent evidence to the contrary. The first step is to determine whether a breach of the provision at issue actually occurred. The second step is, if a breach did occur, was the insurer prejudiced so that UIM coverage must be forfeited.  More Like This Headnote

Insurance Law > Motor Vehicle Insurance > Underinsured Motorists Coverage
Insurance Law > Motor Vehicle Insurance > Notice Obligations
*HN8* The two-step approach in late-notice cases requires that the court first determine whether the insured's notice was timely. This determination is based on asking whether the underinsured motorist (UIM) insurer received notice within a reasonable time in light of all the surrounding facts and circumstances. If the insurer did not receive reasonable notice, the next step is to inquire whether the insurer was prejudiced. Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut. In cases involving the alleged breach of a consent-to-settle or other subrogation-related clause, the first step is to determine whether

the provision actually was breached. If it was breached, the second step is to determine whether the UIM insurer was prejudiced. If a breach occurred, a presumption of prejudice to the insurer arises, which the insured party bears the burden of presenting evidence to rebut. More Like This Headnote

**COUNSEL:** KENNETH J. IGNOZZI,Dayton, Ohio Attorney for Plaintiff-Appellant.

JOHN D. WILLEY, and STUART J. GOLDBERG, Toledo, Ohio Attorneys for Defendant-Appellee, Michigan Mutual Insurance Company.

JAMES W. GUSTIN, Cincinnati, Ohio Attorney for Defendant-Appellee, Personal Service Insurance Company.

**JUDGES:** FAIN, P.J. GRADY and YOUNG, JJ., concur.

**OPINIONBY:** FAIN

**OPINION:**

FAIN, P.J.

**[*P1]** Plaintiff-appellant Todd C. Grubb appeals from a summary judgment rendered against him on his complaint against defendants-appellees Personal Service Insurance Company and Michigan Mutual Insurance Company for underinsured motorist coverage. He contends that the trial court erred in rendering summary judgment, and that it also erred by failing to stay the action below pending the decision in _Ferrando v. Auto Owners Mut. Ins. Co._, 98 Ohio St.3d 186, 781 N.E.2d 927, 2002 Ohio 7217. That case has now been decided. Based upon that decision, we agree with Grubb that there is a genuine issue of material fact whether either Personal Service Insurance Company or Michigan Mutual Insurance Company **[**2]** was prejudiced by Grubb's failure to have provided timely notice of his claims, or by his failure to have preserved each insurance company's rights of subrogation. We also reject Michigan Mutual's alternative arguments that: (1) Grubb is not an insured under its policy; (2) its policy is not covered by the uninsured/underinsured requirements of R.C. 3937.18, because its insured, Daimler Chrysler, is really self-insured; and (3) Grubb is not entitled to coverage because his damages did not exceed Daimler Chrysler's deductible. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.

I

**[*P2]** In April, 1997, Grubb sustained injuries when the motorcycle he was operating was hit by a van operated by Marva Moore. Grubb filed suit against Moore. In March 1998, the suit was settled with the agreement that in exchange for the payment of Moore's liability insurance limit of $ 100,000, Grubb would dismiss the case and release Moore from further liability.

**[*P3]** At the time of the accident, Grubb was employed by Daimler Chrysler Corporation, and he resided with his mother, **[**3]** Carol Grubb, who was employed by the Valley View Local Schools. Daimler Chrysler had in force an

insurance policy providing uninsured/underinsured motorist coverage. The policy was issued by defendant-appellee, Michigan Mutual Insurance Company. Valley View Local Schools had in force an insurance policy providing uninsured/underinsured motorist coverage that was issued by defendant-appellee, Personal Service Company.

[*P4]  Grubb brought an action against Michigan Mutual Insurance Company ("MMI") and Personal Service Company ("PSC") seeking underinsured motorists coverage under both policies pursuant to _Scott-Pontzer v. Liberty Mut. Fire Ins. Co._, 85 Ohio St.3d 660, 710 N.E.2d 1116, 1999 Ohio 292. Both insurance companies filed motions for summary judgment contending that Grubb was not entitled to coverage because he had failed to comply with policy requirements pertaining to timely notice and notice of settlement and subrogation rights. MMI also made alternative arguments in support of its motion which will be discussed below. The trial court rendered summary judgment against Grubb upon a finding that he had failed to abide by the policy requirements regarding [**4]  notice and subrogation rights. From this judgment Grubb appeals.

II

[*P5]  Grubb's First Assignment of Error states as follows:

[*P6]  "APPELLANT'S JOINT MOTION FOR CONTINUANCE AND STAY SHOULD HAVE BEEN GRANTED BECAUSE THE SUPREME COURT'S DECISION IN _FERRANDO V. AUTO OWNERS MUT. INS. CO._ AND _LUCKENBILL V. MIDWESTERN INDEM. CO._ WOULD HAVE PROVIDED THE COMMON PLEAS COURT WITH JUDICIAL ECONOMY AND IMPORTANT GUIDANCE WITH RESPECT TO THE ISSUES IN THIS CASE."

[*P7]  Grubb argues that the trial court should have granted his motion for a stay of proceedings pending the resolution of _Ferrando v. Auto Owners Mut. Ins. Co._, 98 Ohio St.3d 186, 781 N.E.2d 927, 2002 Ohio 7217 in the Ohio Supreme Court.

[*P8]  We need not address this argument as it has been rendered moot by our determination that the matter must be remanded for further proceedings. Accordingly, the First Assignment of Error is overruled as moot.

III

[*P9]  Grubb's Second and Third Assignments of Error are as follows:

[*P10]  "SUMMARY JUDGMENT WAS ERRONEOUSLY GRANTED TO DEFENDANT-APPELLEE MICHIGAN MUTUAL INSURANCE COMPANY, BECAUSE APPELLANT FULFILLED HIS OBLIGATIONS [**5]  UNDER THE MICHIGAN MUTUAL POLICY AND HE IS ENTITLED TO UM/UIM COVERAGE.

[*P11]  "APPELLANT DID NOT DESTROY MICHIGAN MUTUAL'S SUBROGATION RIGHTS SINCE SUBROGATION IS NOT A PRECONDITION THAT WOULD PREVENT APPELLANT FROM RECOVERING UM/UIM COVERAGE UNDER THE MICHIGAN MUTUAL POLICY."

[*P12]  Grubb contends that the trial court erred in granting summary

judgment because he did not violate any provisions regarding notice or consent to settlement and protection of subrogation rights. MMI contends that the trial court did not err in rendering summary judgment. It also advances the following as alternative reasons for affirming the trial court's grant of summary judgment. Specifically, MMI contends (1) that Grubb does not qualify as an insured under its policy; (2) that its policy is not subject to R.C. 3937.18; and (3) that Grubb is not entitled to coverage unless his damages exceed Daimler Chrysler's deductible.

[*P13]  *HN1* We review the appropriateness of summary judgment de novo. _Koos v. Cent. Ohio Cellular, Inc._ (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, citation omitted. *HN2* Pursuant to Civ.R. 56, summary judgment is appropriate when:  [**6]  (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." _Zivich v. Mentor Soccer Club, Inc._, 82 Ohio St.3d 367, 369-70, 1998 OH 389, 696 N.E.2d 201. Additionally, "an appellate court can decide an issue on grounds different from those determined by the trial court, so long as the evidentiary basis upon which the appellate court relies was addressed before the trial court and is a matter of record." (Citation omitted.) _Wodrich v. Federal Ins. Co._, Greene App. No. 02CA3, 2002 Ohio 5122, P20. With this standard in mind, we first address MMI's alternative arguments regarding Grubb's entitlement to coverage under the policy prior to reaching Grubb's arguments regarding compliance with policy requirements.

[*P14]  MMI argues that Grubb does not qualify as an insured because he is not named as an insured under the policy and because coverage does not arise pursuant to _Scott-Pontzer, supra._ [**7]

[*P15]  In _Scott-Pontzer_, the Supreme Court found that *HN3* when the only named insured is a corporate entity, the use of the word "you" in the description of who is an insured is essentially meaningless because "a corporation itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle." 85 Ohio St. 3d at 664. Thus, the court reasoned that "you" could be construed to include the employees of the corporation, thereby extending coverage to the employees of the named corporation. Id.

[*P16]  However, in _White v. American Manufacturers Mut. Ins. Co._, Montgomery App. No. 19206, 2002 Ohio 4125, we concluded that the ambiguity addressed in _Scott-Pontzer_ is eliminated when the "Drive Other Car" endorsement of a similarly-worded policy includes, as named insureds, specific individuals. 2002 Ohio 4125 at P32. MMI relies on this holding as support for its claim that Grubb is not entitled to coverage pursuant to _Scott-Pontzer_. Specifically, MMI notes that, while the named insured provisions refer only to Daimler Chrysler as the insured, its "Drive Other Car" endorsement broadens its policy to language to include the following: "Employee, [**8] spouse or any relative while a resident of the same household as per listing on file [with] the insured." Thus, it argues that "you" is not rendered meaningless, because it refers to certain individuals as insureds.

[*P17]  We agree with this argument to an extent. The policy does refer to individuals - namely employees and their spouses; however, it only applies to

employees listed on a file held by Daimler Chrysler. This listing is not part of the record before us. If such a listing exists, and Grubb is not a named insured on the list, then no coverage exists, and none arises by operation of law. Conversely, if no such listing exists, then the policy may fall within the scope of *Scott-Pontzer*. In other words, if the list does not exist, and thus, there are no named insureds other than the company, then arguably, a *Scott-Pontzer* ambiguity exists. This issue must be addressed by the trial court upon remand. We cannot find that Daimler Chrysler met its burdens under Civ. R. 56 without the list, which is not in the record.

**[*P18]** We next turn to MMI's contention that its policy is not subject to R.C. 3937.18. *HN4*⚓The version of R.C. 3937.18 **[**9]** relevant to this case provides that uninsured/underinsured motorists coverage be offered with every policy of insurance delivered, or issued for delivery in this state, in an amount equivalent to the amount of liability coverage. In the absence of a valid offer and rejection, UM/UIM coverage in an amount equal to the liability coverage limit is imputed as a matter of law. However, in Ohio, it has been determined that R.C. 3937.18 is not applicable to self-insurers who comply with R.C. 4509.45(E) and 4509.72. *Snyder v. Roadway Express, Inc.* (1982), 7 Ohio App.3d 218, 7 Ohio B. 279, 455 N.E.2d 11, syllabus. The Supreme Court extended the self-insurer exception to R.C. 3937.18 to include companies that purchase financial responsibility bonds. *Grange Mut. Cas. Co. v. Refiners Transport and Terminal Corp.* (1986), 21 Ohio St.3d 47, 21 Ohio B. 331, 487 N.E.2d 310, syllabus. The court reasoned that a company's status as a bond principal renders it a self-insurer in the "practical sense". 487 N.E.2d at 313.

**[*P19]** MMI contends that, under Ohio law, Daimler Chrysler must be considered self-insured, **[**10]** and therefore exempt from R.C. 3937.18, because its insurance policy is merely a "fronting policy." *HN5*⚓"A 'fronting agreement' is an insurance term indicating that an entity is renting an insurance company's licensing and filing capabilities in a particular state or states." *Tucker v. Wilson*, Clermont App. No. CA2002-01-002, 2002 Ohio 5142. In practical effect, this type of policy typically involves the purchase of a liability policy with a deductible in the same amount as the coverage. In this case, the MMI policy has a deductible of $ 4,950,000 and liability limits of $ 5,000,000, leaving a potential coverage of up to $ 50,000 where the loss exceeds $ 4,950,000. MMI and Daimler Chrysler also executed various other side agreements whereby the companies agreed that Daimler Chrysler must indemnify MMI for any amounts it may pay on a claim.

**[*P20]** A review of the issue of whether companies that utilize fronting policies are to be deemed self-insured reveals a split of authority in the few appellate districts in Ohio that have addressed the matter. The courts that have applied the self-insured exception to fronting policies have relied **[**11]** upon the "practical sense" language of *Grange*, supra, and have extended that ruling to include companies that utilize fronting policies. See, e.g., *McCollum v. Continental Ins. Co.* (1993), Lucas App. No. L-92-141, 1993 Ohio App. LEXIS 2022 ; *Lafferty v. Reliance Ins. Co.* (S.D.Ohio 2000), 109 F. Supp. 2d 837.

**[*P21]** We find more compelling the decision of the Tenth District Court of Appeals in *Dalton v. Wilson*, Franklin App. No. 01AP-014, 2002 Ohio 4015, wherein the court held that *HN6*⚓fronting agreements do not constitute self-insured schemes. The Tenth District noted that the courts that have found these

agreements to constitute self-insurance have extended the holding in _Grange,_ _supra,_ in ways not contemplated by the Ohio Supreme Court. 2002 Ohio 4015, at P75. The court further stated that a company cannot be allowed to fail to comply "with the statutory requirements for invoking self-insured status, [and at the same time seek to] declare itself a self-insurer for purposes of avoiding the requirements of the UM/UIM statute." 2002 Ohio 4015, at P76. "As stated by the Montgomery County Court of Common Pleas in _Roberts v. State Farm Mutual_ _Auto. Ins. Co._ (2001), Montgomery C.P. No. 00-CV-0886: ' **[**\*12]** It may be well and good and entirely lawful for a 'fronting agreement' *** to spare [an entity] the expense and potential administrative quagmires of formal registration in every state, territory and country where it does business and for these 'devices' to provide [an entity] the use of [an insurer's] filings and claims service, but they do not paralyze or mute the walking and quacking duck of insurance coverage.' " 2002 Ohio 4015, at P77-78.

**[\*P22]** We conclude that Daimler Chrysler's fronting agreement with MMI does not render it self-insured. Accordingly, the subject policy of insurance is not exempted from the requirements of R.C. 3937.18.

**[\*P23]** We next address MMI's contention that Grubb's damages must exceed the deductible amount before he can recover under the MMI policy. In essence, MMI argues that any UM/UIM coverage afforded under its policy does not begin until Grubb has exceeded the amount of primary liability insurance offered by Daimler Chrysler via its self-insurance deductible. MMI cites _Titman v. Penn-_ _America Ins. Co._ (Mar. 26, 1987), Cuyahoga App. No. 51915, 1987 Ohio App. LEXIS 6801 **[**\*13]** and _Moyer v. Transamerica Ins. Co._ (Oct. 22, 1987), Cuyahoga App. No. 53524, 1987 Ohio App. LEXIS 9271 as support for this argument. Our review of these cases reveals that both involve excess coverage/umbrella policies rather than, as in the case at bar, primary liability policies. Therefore, we find these cases inapplicable. MMI does not cite, and we cannot find, any other cases to support this argument. Thus, we find that this argument is not well-taken.

**[\*P24]** Next, we turn to Grubb's argument. Grubb contends that he did not violate any notice and consent provisions in the MMI policy. He also contends that any lack of notice did not prejudice MMI. Therefore, he contends that the trial court erred in rendering summary judgment against him.

**[\*P25]** That MMI did not receive notice of a claim or notice regarding settlement with the tortfeasor until well after the subject accident and settlement, is not in dispute. The trial court determined that this failure of notice constituted a breach of contract, requiring judgment against Grubb.

**[\*P26]** The Ohio Supreme Court has just recently addressed the issue of notice in _Ferrando v. Auto-Owners Mut. Ins. Co.,_ 98 Ohio St.3d 186, 781 N.E.2d 927, 2002 Ohio 7217 **[**\*14]** , wherein it opined that, _HN7_ " * * *when an insurer's denial of UIM coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary." 2002 Ohio 7217, at P81. The Court also stated that the breach of consent-to-settle or other subrogation-related provisions in UIM policies is presumed to be prejudicial to

the insurer absent evidence to the contrary. 2002 Ohio 7217, at P88.

**[*P27]** The Court further set forth a two-step approach for determining whether either of these provisions has been breached, and the effect thereof:

**[*P28]** "The first step is to determine whether a breach of the provision at issue actually occurred. The second step is, if a breach did occur, was the insurer prejudiced so that UIM coverage must be forfeited? * * *

**[*P29]** _HN5_ "The two-step approach in late-notice cases requires that the court first determine whether the insured's notice was timely. This determination is based on asking **[**15]** whether the UIM insurer received notice 'within a reasonable time in light of all the surrounding facts and circumstances'. * * * If the insurer did not receive reasonable notice, the next step is to inquire whether the insurer was prejudiced. Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut.

**[*P30]** "In cases involving the alleged breach of a consent-to-settle or other subrogation-related clause, the first step is to determine whether the provision actually was breached. * * * If [it] was breached, the second step is to determine whether the UIM insurer was prejudiced. If a breach occurred, a presumption of prejudice to the insurer arises, which the insured party bears the burden of presenting evidence to rebut." 2002 Ohio 7217, at P89-91.

**[*P31]** Therefore, according to _Ferrando,_ the inquiry whether UIM coverage is owed does not stop upon a finding of breach of a policy provision. Instead, a trial court must consider the effect of the breach. If the breach is not prejudicial to the insurer, coverage will be owed.

**[*P32]** In this case, the trial court ended its inquiry at its **[**16]** finding of breach, without considering the effect of the breach. We conclude that this matter must be remanded for further consideration, in accordance with the holding in _Ferrando._

**[*P33]** Accordingly, Grubb's Second and Third Assignments of Error are sustained.

IV

**[*P34]** Grubb's Fourth and Fifth Assignments of Error are as follows:

**[*P35]** "SUMMARY JUDGMENT WAS ERRONEOUSLY GRANTED TO DEFENDANT-APPELLEE, PERSONAL SERVICE COMPANY, BECAUSE APPELLANT FULFILLED HIS OBLIGATIONS UNDER THE PERSONAL SERVICE POLICY AND HE IS ENTITLED TO UM/UIM COVERAGE.

**[*P36]** "APPELLANT DID NOT DESTROY PERSONAL SERVICE'S SUBROGATION RIGHTS SINCE SUBROGATION IS NOT A PRECONDITION THAT WOULD PREVENT APPELLANT FROM RECOVERING UM/UIM COVERAGE UNDER THE PERSONAL SERVICE POLICY."

**[*P37]** Grubb contends that he did not violate any provisions regarding notice

and protection of subrogation in the PSC policy, and that the trial court therefore erred in rendering summary judgment against him.

[*P38]  For the reasons set forth in Part III, above, regarding notice and breach, we conclude that the trial court erred in rendering summary judgment, because it did not consider whether [**17]  Grubb's violation of the notice and protection-of-subrogation provisions prejudiced PSC. To that extent, Grubb's Fourth and Fifth Assignments of Error are sustained.

V

[*P39]  Grubb's Second, Third, Fourth and Fifth Assignments of Error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings in accordance with this opinion.

GRADY and YOUNG, JJ., concur.